**MERRIMACK MUTUAL FIRE INSURANCE COMPANY, Appellant,**

v.

**David L. McCAFFREE et ux., Appellees.**

**No. 17940.**

Court of Civil Appeals of Texas, Dallas.

Sept. 28, 1972.

Rehearing Denied Oct. 26, 1972.

Larry L. Gollaher, Thompson, Coe, Cousins, Irons & Porter, Dallas, for appellant.

Thomas A. Wright, III, Middleton, Wright, Winborn & Bedsole, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

The sole question presented by this appeal is the liability *vel non* of Merrimack Mutual Fire Insurance Company for a property loss sustained by David L. Mc-Caffree and wife. The trial court, sitting without a jury, determined that the Texas Standard Homeowners Policy issued by the insurance company to the McCaffrees, as insureds, afforded coverage for the loss made the basis of a claim under the policy. Judgment was accordingly rendered in favor of the claimants in an amount to compensate them for the cost of repairing the damages to their property.

The case was submitted to the trial court upon stipulated facts. Mr. and Mrs. McCaffree purchased the house located in University Park in November, 1969. The dwelling is estimated to be about thirty years old and sits upon a pier and beam foundation. About ten to fifteen years prior to the institution of this action a second bathroom was added to the rear of the dwelling. The shower stall in the addition was constructed without a shower pan, ordinarily made of lead, plastic, or other material, and which is usually required to be set under the shower floor to catch the water which penetrates the shower floor and drain off through the sewer line thereby preventing the water from coming in contact with the wood structural portion of the building. The absence of such shower pan under this shower was an inherent vice. The lack of such a pan made it inevitable that when the shower was used eventually water would pass through the tile shower floor and around the drain pipe and leak onto the wood under and around the shower stall. This would happen without the intervention of any fortuity or chance occurrences, and was inevitable and is, in fact, what occurred in this portion of the dwelling.

The insurance company issued its Texas Standard Homeowners Policy on November 18, 1969. The premium had been paid on this policy and there is no question as to the force and validity of same during its effective dates which included the time of the discovery of the alleged loss. At the time the insurance policy was purchased neither the insurance company nor the insureds knew that the shower did not have

a shower leakage pan. It was and is impossible to crawl under the addition since the beam of the foundation was connected directly to the perimeter beam of the dwelling and there was no scuttle hole in the addition or other access under it from the outside. The crawl space under the floor of the addition was not vented in any way; the air space under the addition was thus merely dead air space with no access, no light and no ventilation.

The leaking water over many years' time plus inadequate ventilation and the absence of light caused by the dark, moist and damp environment under the addition was conducive to the growth of decay causing fungus. The leaking water, even if the area had been vented, would probably, by itself, have caused an environment conducive to the growth of decay causing fungus. Such fungi did grow in this environment, living off and consuming the cellulose in the wood under said shower, causing it to decay and deteriorate to a condition that can be generally described as "rotten". This damage or deterioration was directly caused by the fungi, which in turn was precipitated by a number of factors, the principal of which was water leaking from the shower. It is unknown how much of this damage was in existence before November 18, 1969, but "it would have had to have started occurring before that date since the rot which was later discovered could not have occurred in the period of one year."

The rot and deterioration reached such an extent that in July, 1970 the insureds noticed that the floor of the shower in the addition had sunk and they caused an inspection to be made to determine the cause of this sinking floor. It was on that day that they discovered that the damage and rot in question had occurred and proper notice and proof of loss was given the insurance company as provided in the policy.

There was evidence of termites in the wall of the addition and a portion of the damage in question may have been caused by the termites rather than by rot, mould or other fungi. The portion of the damage in question which might have been caused by termites does not exceed 10 per cent of the total damage. The termites were subterranean termites which are attracted to damp, moist areas and it is probable that said termites were attracted to the addition by the water leaking from the shower stall. It is also probable that any damage from these termites took place over a number of years and began before November 18, 1969.

It is probable that wood in the floor of the addition under the shower stall and in the walls would have had some deterioration because of the water leaking from the pipes and shower stall even if the area had been properly vented, and the damage in question could have, and probably would have occurred even if the area had been properly vented, although it probably would have been less severe.

The stipulation contained an agreement concerning the amount of money expended by the insureds to repair the damage.

The insurance policy contains the following provisions material to the issues in this case:

"PROPERTY INSURED

COVERAGE A—DWELLING, as described on Page 1 of this policy, while occupied by the Insured principally for dwelling purposes.

\*   \*   \*   \*   \*   \*

PERILS INSURED AGAINST

Property as described and limited under Coverage A is insured against:

ALL RISKS OF PHYSICAL LOSS except as otherwise excluded.

\*   \*   \*   \*   \*   \*

EXCLUSIONS (Applicable to Property Insured under Coverages A and B and Perils Insured Against)—

This insurance does not cover:

\* \* \* \* \* \*

i. Loss caused by inherent vice, wear and tear, deterioration; rust, rot, mould or other fungi; dampness of atmosphere, extremes of temperature; contamination; vermin, termites, moths or other insects;

\* \* \* \* \* \*

The foregoing Exclusions a through k shall not apply to ensuing loss caused by fire, smoke or explosion and Exclusions i, j and k shall not apply to ensuing loss caused by collapse of building, or any part thereof, water damage or breakage of glass which constitutes a part of the building, provided such losses would otherwise be covered under this policy."

Appellant's primary point charges that the court erred in failing to render judgment for the insurance company since the loss was excluded by Exclusion i of the policy. Appellees counter with the contention that the trial court's judgment was proper since the loss was covered by the insurance policy and specifically the "ensuing loss" provision of the exclusion section of said policy.

■ We first notice certain well established rules of law which govern our review of this particular case. Since the case was tried upon an agreed stipulation of facts such agreement is to be considered by us in the nature of a special verdict. The courts are without power, in the absence of a provision of the agreed statement providing otherwise, to draw any inference, or find any facts, not embraced in the agreement, unless, as a matter of law, such other inferences are necessarily compelled, and the judgment of the court must only declare the law which necessarily arises from the facts agreed upon. Hutcherson v. Sovereign Camp, W.O.W., ·112 Tex. 551, 251 S.W. 491 (1923).

■ Also, where the insurance company relied upon specific exclusions contained in the policy, and thus raised issues of contract coverage, the burden of producing evidence to demonstrate that the loss was not attributable to the pleaded excluded hazards rested upon appellees. Hardware Dealers Mutual Ins. Co. v. Berglund, 393 S.W.2d 309 (Tex.Sup.1965).

■ In conformity with these rules we have carefully reviewed the agreed record in this case and have reached the conclusion that the loss sustained by appellees falls within the express exclusion of paragraph i, referred to above, and that the subsequent qualification of exclusionary paragraph i does not have the effect of eliminating such exclusion so as to bring the loss within the general coverage of the policy. The exclusion specifically provides that loss caused by inherent vice such as "rust, rot, mould or other fungi; dampness of atmosphere, extremes of temperature; contamination; vermin, termites, moths or other insects;" is not covered under the policy. Since the damage or deterioration to the property was admittedly directly caused by fungi, and to some extent by termites, such would bring it clearly within the exclusion of the contract. The only problem, therefore, is presented by the language of the paragraph contained in the policy, following exclusionary paragraph i, to the effect that such exclusion i shall not apply to "ensuing loss caused by \* \* \* water damage." Can it be said that the agreed statement compels the conclusion that the "ensuing loss" was the result of "water damage"? We do not think that it does.

We had occasion in McKool v. Reliance Insurance Co., 386 S.W.2d 344 (Tex.Civ. App., Dallas 1965, writ dism'd), to discuss the meaning of the word "ensuing" as used in a similar policy. We said there that "ensuing losses" meant losses which follow or come afterward as a consequence. We there construed a case involving water damage which ensued following a freezing temperature which caused chipping and cracking of ceramic tile in the walls of a swimming pool. We held that the tile having cracked because of the extreme cold or

ice, there could be no recovery therefor, but if water had entered through the cracks thus caused, the ensuing damage caused by the entry of the water would be recoverable. We think our decision in *McKool*, supra, is controlling here. For the loss in this case to be recovered by the policy it must have been "ensuing loss" caused by water damage per se. In other words, to be ensuing loss caused by water damage such would necessarily have to follow or come afterwards as a consequence. The facts do not support this situation since it is agreed that the loss in question was caused by the fungi, and to some extent by termites. While it may be said that the fungi grew in a favorable atmosphere the deterioration, rot, and fungi cannot be said to be "water damage," as such.

A similar situation was involved in Aetna Casualty & Surety Co. v. Yates, 344 F. 2d 939 (5th Cir. 1965). There the loss caused by defective construction which was said to be an inherent vice and consisted of "deterioration" caused by "rot" and such rot caused "fungi" and "dampness of atmosphere", which produced a condition or environment in which the fungi could grow and result in the damage. The court held that under such circumstances the loss was not such "ensuing loss caused by water damage" and therefore denied liability on the policy. We think that the same situation exists here. The water which ran from the shower could very well have created an atmosphere or environment which could have, and possibly did, contribute to the growth of fungi which, in turn, caused the rot and deterioration of the structure. Under these circumstances it cannot be legally said that the "ensuing damage" was caused by "water damage". To the same effect see Park v. Hanover Insurance Co., 443 S.W.2d 940 (Tex.Civ.App., Amarillo 1969).

Appellees place great reliance upon Employers Casualty Co. v. Holm, 393 S.W.2d 363 (Tex.Civ.App., Houston 1965, no writ) and Allstate Insurance Co. v. Smith, 450 S.W.2d 957 (Tex.Civ.App., Waco 1970, no writ). While each of these cases involves some factual similarities we think that they are distinguishable from the agreed statement contained in this case. In each of those cases the facts reveal a more definite conclusion that the ensuing loss was actually caused by water damage. In any event, we are constrained to hold that the authorities relied upon in support of our conclusion of lack of liability of appellant insurance carrier are more authoritative in the light of the particular facts presented.

The judgment of the trial court is reversed and judgment is here rendered that appellees take nothing by their cause of action against appellant.

Reversed and rendered.