**MCZ, INC. and Roy L. Turner, Trustee, Appellants,**

v.

**Michael J. TRIOLO, Appellee.**

**No. 01–85–0398–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 1, 1986.

Rehearing Denied May 22, 1986.

Steve Underwood, Houston, for appellants.

C.J. King, Bryan, Fred Lohmeyer, Taylor & Mizell, Dallas, Joseph A. Kornfeld, Hiller, Korfeld & Falik and Garry D. Henderson, Houston, for appellee.

Before JACK SMITH, DUGGAN and HOYT, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a declaratory judgment determining the rights of the parties with respect to the ownership and the proceeds of production of oil and gas from a 150 acre tract in Brazos County. The trial court's judgment held that a non-participating royalty interest owner was "effectively" pooled into the second of two pooling units (which together covered the entire tract) and was bound by the second unit's pooling agreement by virtue of having voluntarily entered a pooling agreement governing the first unit.

The case was submitted to the court without a jury upon an "Agreed Statement of Facts Regarding All Issues Except Attorney's Fees," filed pursuant to Rule 263, Tex.R.Civ.P. The agreed statement, together with testimony by attorneys relating solely to legal fees, constituted the entirety of the evidence.

In 1964, Mrs. Lucille Palermo, a widow, conveyed by warranty deed to D.M. Triolo and appellee, Michael Triolo, the 150 acre tract in question ("the Triolo tract"). Mrs. Palermo's deed to the Triolos recited that she reserved:

> an undivided 1/16th non-participating royalty interest, same being 1/2 of the usual 1/8th royalty in and to all oil, gas and minerals ... produced from the land hereby conveyed. It is distinctly understood that the grantees herein shall have the right to execute oil, gas and mineral leases on said land without the joinder of the grantor herein and they shall collect all bonus and rentals for deferred drilling, but in the event of production the grantor shall receive 1/2 of the royalty for production on the land hereby conveyed.

In 1969, D.M. Triolo conveyed his entire undivided interest in the tract to appellee, Michael J. Triolo, by a deed that was expressly made subject to the "mineral reservation" set out in the Palermo deed to both Triolos.

In 1976, Triolo and his wife, as lessors, executed an oil, gas, and mineral lease ("The Triolo Lease") of the entire tract to Amalgamated Bonanza Oil Company, Ltd., reserving a 1/8th royalty on oil and gas to the lessors. Paragraph four of the lease granted to the lessee the right to pool the land in accordance with terms set out. The lease was eventually acquired by appellant MCZ, Inc. ("MCZ").

In 1980, Mrs. Palermo conveyed her entire reserved interest in the tract to appellant, Roy L. Turner, Trustee.

By a "Designation of Pooled Oil Unit," dated August 17, 1981, MCZ pooled 27.06 acres of the Triolo tract to form the Philipello Oil Unit No. 1 ("the Philipello Unit").

Turner signed an instrument entitled "Pooling Agreement," dated May 3, 1982,

which recited that Turner was the owner of a non-participating royalty interest in the described tract and further stated:

> Whereas, such unit includes 27.06 acres out of the above described 150.00 acre tract, and the said Roy L. Turner, Trustee, to the extent expressly set forth herein, is willing to have such 27.06 acres out of said 150.00 acres included in and pooled with said unit;

> Now Therefore, Roy L. Turner, trustee, does hereby Grant, Lease and Consent unto Prodeco Oil & Gas Company Ltd., and Gulf Oil Corporation the right to so pool said 27.06 acres within said Unit, PROVIDED that this Grant, Lease and Consent does not apply to all or any portion of said 150.00 acre tract that is not included within said 27.06 acre tract.

A producing well was drilled on a portion of the Philipello Unit other than the 27.06 acres from the Triolo tract.

Thereafter, on August 3, 1982, MCZ pooled the remaining 123.8 acres of the Triolo tract into the M.J. Triolo Unit No. 1 ("the Triolo Unit"). A producing well was drilled and completed on the Triolo Unit within the acreage of the Triolo tract. As operator of both wells, MCZ paid Turner for his interest in production from both units.

By a letter dated February 25, 1983, Triolo's attorney advised MCZ, the working interest operator, that Triolo took the position that Turner's acceptance of royalty payments for production from the Philipello Unit on acreage not owned by Turner constituted a ratification by Turner of the pooling provisions of the Triolo lease, and that such ratification authorized the pooling of Turner's interest in the Triolo Unit as well. Accordingly, Triolo demanded that MCZ credit him with a royalty interest of .0483938, rather than the royalty interest of .0342875 that MCZ had credited to Triolo by a recently amended Division Order.

The agreed statement of facts recited that Turner "has refused to ratify the [Triolo Unit] and has demanded from MCZ, Inc., which company is disbursing the pro-

ceeds of production from both the [Philipello and the Triolo Units], as well as from the other owners of working interests in the [Triolo Unit], that they account to him for a full ¹⁄₁₆th of the production from the well located upon the [Triolo Unit]."

Triolo thereafter instituted this suit to determine his royalty rights under the Texas Declaratory Judgment Act, former Tex. Rev.Civ.Stat.Ann. art. 2524–1, sections 10 and 11, *repealed by* ch. 959 sec. 9(1), 1985 Tex.Gen.Laws 7043, 7218, claiming that Turner had ratified the Triolo Unit by his acceptance of the pooling provisions of the Philipello Unit.

MCZ answered and filed its bill of interpleader as to Triolo and Turner, and began making regular deposits into the court's registry of the disputed royalty, i.e., the difference in Triolo's royalty prior to the suit and the amount Triolo would be entitled to receive if Turner ratified the Triolo Unit, with the corresponding reduction to Turner.

MCZ further cross-filed against Turner for recovery of any disputed royalty the court might determine to be due to Triolo and which MCZ had already paid to Turner.

Turner then cross-acted against MCZ, claiming MCZ to be independently obligated to pay the disputed royalty to Turner.

Following the bench trial based on the agreed statement of facts plus testimony on attorney's fees, the trial court found and declared in its judgment that: (1) Turner had ratified and was bound by the pooling provisions of the Triolo lease, so that his non-participating royalty interest was "effectively pooled" into both the Philipello Unit and the Triolo Unit in accordance with the terms and provisions of the two pooling declaration instruments; (2) Triolo is entitled to recover from MCZ and the other ten named working interest owners the sum of $29,978.10, representing .0483937 of production proceeds from the Triolo Unit from the beginning of production through September 1984, less $12,540.49 deposited by MCZ into the registry of the court, which sum was ordered to be paid by the clerk to

Triolo on application [the $17,437.61 balance having been previously paid by MCZ to Turner]; (3) MCZ and the other working interest owners are entitled to recover from Turner the sum of $17,437.61 in excess production proceeds previously paid Turner from the Triolo Unit; (4) money judgments rendered will bear interest at 10% per annum from date of judgment until paid; (5) Triolo is entitled to .0483937 of production proceeds from the Triolo Unit until it ceases; (6) Turner shall pay Triolo's attorney's fees in the amount awarded; (7) costs are adjudged against Turner; and (8) all relief not expressly granted is denied.

Appellants Turner and MCZ assert 21 and 14 points of error respectively. Appellee Triolo asserts a single counterpoint.

By Turner's points of error 1–12 and MCZ's points of error 1–3, the appellants assert that the trial court erred in declaring judgment that Turner ratified and was bound by the pooling provisions of the Triolo lease, and that Turner's nonparticipating royalty interest was "effectively" pooled into the Triolo Unit. These points of error assert that there is no evidence and insufficient evidence to support the judicial declaration of ratification, that the declaration is against the great weight and preponderance of the evidence, and that as a matter of law the record shows that Turner refused to ratify and pool his interest.

When a case is tried upon an agreed statement of facts,

[t]he agreed statement is to be considered in the light of well-defined legal limitations, and in the nature of a special verdict; it admits there is no dispute as to the facts, and constitutes a request by each of the litigants for a judgment, which each contends arises as a matter of law from the agreed facts.

The courts are without power, in the absence of a provision in the agreed statement providing otherwise, to draw any inference, or find any facts, not embraced in the agreement, unless, as a matter of law, such other inferences are necessarily compelled; and the judgment of the court must only declare the law which necessarily arises from the facts agreed upon.

*Hutcherson v. Sovereign Camp, W.O.W.,* 112 Tex. 551, 251 S.W. 491, 492 (1923); *accord Henry S. Miller Co. v. Wood,* 584 S.W.2d 302, 304 (Tex.Civ.App.—Texarkana 1979), *aff'd on other grounds,* 597 S.W.2d 332 (Tex.1980); *Merrimack Mutual Fire Insurance Co. v. McCaffree,* 486 S.W.2d 616, 619 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.); *Alamo National Bank v. Daubert,* 467 S.W.2d 555, 559 (Tex.Civ. App.—Beaumont 1971, writ ref'd n.r.e.).

The nature of non-participating royalty is clear and definite.

Non-participating royalty has a well-understood meaning in the oil industry. It may be defined as an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty, which does not carry with it the right to participate in the execution of the bonus payable for, or the delay rentals to accrue under, oil, gas, and mineral leases executed by the owner of the mineral fee estate. The exclusive leasing privilege remaining in the mineral fee owner is commonly referred to and known as the "executive right."

Jones, *Non-Participating Royalty,* 26 Texas L.Rev. 569 (1948).

The interest reserved by Mrs. Palermo, Triolo's original grantor, and conveyed by her to Turner is a non-participating royalty interest, both because it was labeled as such and because the rights apportioned between grantor and grantees in Mrs. Palermo's original deed to the Triolo's comport with the definition of that interest.

Pooling entails the joinder of various tracts of land sufficient for the issuance of a permit to drill a well in accordance with applicable spacing rules. H. Williams & C. Meyers, *Oil & Gas Law,* sec. 901 (abr. ed. 1975). Pooling is, in effect, a cross-conveyance of interests in land by agreement among the participating parties, each of whom obtains an undivided joint ownership in the royalty earned from the land in the

"block" created by the agreement. Royalty is distributed on the basis of the proportion each party's acreage bears to the whole block. *Brown v. Smith*, 141 Tex. 425, 174 S.W.2d 43, 46 (1943).

■ The holder of executive rights cannot pool the interests of a non-participating royalty owner without the latter's consent. *Montgomery v. Rittersbacher*, 424 S.W.2d 210, 213 (Tex.1968); *Brown v. Getty Reserve Oil, Inc.*, 626 S.W.2d 810, 814 (Tex.App.—Amarillo 1981, writ dism'd). Consent to pool may be by agreement, such as Turner's written agreement with MCZ in reference to the Philipello Unit, or by participation in a lease that contains a pooling provision. *Brown v. Smith*, 174 S.W.2d at 46.

The agreed statement of facts under which the case was tried contains no statement that Turner ratified any provision of the Triolo lease. To the contrary, the agreed statement recites:

> Roy L. Turner, Trustee, has refused to ratify the [Triolo Unit] and has demanded from MCZ, Inc., which company is disbursing the proceeds of production from both the [Philipello Unit] and the [Triolo Unit], as well as from the other owners of working interests in the [Triolo Unit], that they account to him for a full one-sixteenth (1/16th) of the production from the well located upon the [Triolo Unit].

Triolo acknowledges there is no question but that, under the stipulation of facts, Turner has attempted to treat the issue of partial ratification as a fact question and to limit his ratification of pooling. The agreed statement of facts thus shows that Turner factually rejected and refused to ratify the Triolo Unit, and agreed to ratify the Philipello Unit only on the condition that no other portion of his interest be pooled. However, Triolo argues, the issue is a matter of law; Turner must ratify pooling under the lease in toto or not at all, and the attempted partial ratification amounted, as a matter of law, to full ratification. He urges that "no Texas Court has yet held that the owner of a non-partic-ipating royalty interest may ratify pooling in part (to the extent that it benefits him) and refuse to ratify pooling in part (to the extent that it is detrimental to him)."

Triolo recognizes the doctrine that the owner of leasing or executive rights may not pool or authorize the pooling of a non-participating royalty owner's interest without the latter's consent. Triolo reasons that the doctrine was developed as an equitable rule to prevent the executory rights owner from taking advantage of the non-participating royalty interest owner by conveying away the latter's interest through pooling (with its resulting cross-conveyancing of underlying minerals). However, he urges, requiring such interest owner's consent should not be extended to allow "partial ratification" where the result will be, as here, that the non-participating royalty interest owner thereby receives "excess royalty" at the expense of the owners of either executive rights or working interest. Here, Triolo points out, if Turner is allowed to ratify only the Philipello Unit, Turner will receive 1/16th × 27.06/160 of the Philipello Unit's production in addition to a full 1/16th of production from the Triolo Unit, thereby reducing Triolo's own interest (as one of the mineral fee owners in both units) in one or the other of the units.

He argues that the relationship between non-participating royalty interest owner and executive rights owner is that of principal and agent, and that the principal ought not to be able to selectively ratify his agent's acts, accepting those that benefit him and rejecting others.

We disagree. This is not a case of partial or selective ratification. Two distinct acts or transactions by others are involved, one of which Turner ratified and one of which he did not.

■ Since Turner acquired a benefit from the formation of the first pooling unit, which he expressly ratified, Triolo contends that general principles of agency law require that he ratify the second unit, a transaction that would give him no benefit. Ratification extends to all aspects of a

transaction, but does not reach beyond the one transaction. To impose ratification upon Turner, it would be necessary to view the formation of the separate pooling units involving the 150 acre tract as one transaction; that is contrary to the facts. The two units were designated in instruments executed months apart. Restatement (Second) of Agency section 99; *Land Title Co. of Dallas v. F.M. Stigler, Inc.*, 609 S.W.2d 754 (Tex.1980); *Plains Cotton Cooperative Association v. Wolf*, 553 S.W.2d 800, 804 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

Triolo's argument attempts to restrict the already limited non-participating royalty interest owner through the mechanism of pooling units that were anticipated, authorized, and in fact created under the Triolo lease.

Neither Turner nor his predecessor, the initial holder of the non-participating royalty interest, had the right to participate in the mineral fee owner-lessor's lease negotiations, which authorized the lessee to enter pooling agreements. Triolo did execute the lease, however, and thereby contractually consented to the future pooling of his own interest. That action is not binding on Turner's non-participating royalty interest. *Montgomery v. Rittersbacher*, 424 S.W.2d at 213.

The reduction of Triolo's royalty interest results from the terms of the Triolo lease, which is included as an exhibit in the agreed statement of facts. The lease contained provisions that, among others: (1) expressly warranted title to the full mineral estate (when Triolo and his co-grantee acquired only $^{15}$/₁₆th of the mineral estate); (2) reserved a ⅛th royalty in favor of Triolo; (3) granted the lessee the express right to pool; and (4) contained a proportionate reduction clause and a provision that "[a]ll royalty covered by this lease, (whether or not owner by lessor) shall be paid out of the royalty herein provided." To ignore the explicit provisions of the lease would be to rewrite the contract between Triolo, as lessor, and the lessee.

Triolo cites no case authority or precedent for changing the existing law that allows the non-participating royalty interest owner to contract for terms most favorable to his restricted interest, and we decline to do so. Turner's points of error 1–12 and MCZ's points of error 1–3 are sustained.

Disposition of most of MCZ's and Turner's remaining points of error is governed by our decision that Turner did not ratify the Triolo Unit's pooling agreement and that Turner is entitled to a full $^1$/₁₆th non-participating royalty interest from production under the Triolo tract, with no reduction because of the Triolo Unit.

■ Triolo asserts in his single counterpoint that even if the court determines that Turner can ratify as to the Philipello Unit and not ratify as to the Triolo Unit, such that Turner's interest is not effectively pooled into the Triolo Unit, the trial court nevertheless correctly ruled that MCZ was liable for the difference in royalty because MCZ breached its duty to secure appropriate ratification from Turner. Triolo cites *Expando Production Co. v. Marshall*, 407 S.W.2d 254, 260 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.), to support the proposition that the lessee has a fiduciary duty "to exercise the utmost good faith" toward the lessor when exercising its pooling power.

The trial court grounded its judgment solely on the theory that Turner ratified and was bound by pooling provisions of the Triolo lease, such that his non-participating royalty interest became "effectively pooled" into both units. The court did not find in its judgment that MCZ, as lessee, breached a fiduciary duty toward Triolo, the lessor, in the exercise of MCZ's pooling powers. The agreed statement of facts contains no evidence that MCZ did not act in good faith in failing to secure Turner's ratification of the Triolo Unit. To the contrary, the Triolo lease under which MCZ operated (included as an exhibit in the agreed statement of facts), stated in pertinent part:

A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be mineral, royalty or leasehold interests in lands within the unit which are not effectively pooled or unitized.

The trial court correctly refused, under the agreed facts, to find a breach of duty by MCZ toward Triolo in the exercise of its pooling power.

The trial court's award of $29,978.10 to Triolo to be paid by MCZ and the other working interest owners for "excess" production proceeds from the Triolo Unit, less credit for the $12,540.49 deposited by MCZ into the registry of the court, is set aside, as is the judgment over in favor of MCZ and the working interest owners against Turner for the same amount. The recalculation of Triolo's interest in the Triolo Unit at .0483937 of production is set aside. The $12,540.49 paid into the registry of the court by MCZ under its bill of interpleader is ordered paid to Turner.

Turner's points of error 13 through 17 and MCZ's points of error 4 and 5 are sustained. Triolo's counterpoint is overruled.

Because Triolo is entitled to neither the declaratory relief he sought nor any part of the interpleaded funds in the court's registry, the trial court erred in awarding Triolo attorney's fees and costs of court to be paid by Turner. Tex.R.Civ.P. 131. Turner's points of error 18 and 20 are sustained.

Turner's point of error 19 and MCZ's points of error six and seven complain of the trial court's failure to require Triolo to pay their respective attorney's fees.

■ Former article 2524–1, section 10, Tex.Rev.Civ.Stat.Ann., provided that the trial court "may make such award of ... reasonable and necessary attorney's fees as may seem equitable and just."

The trial court's award of attorney's fees to Triolo to be paid by Turner, and the denial of attorney's fees to MCZ and Turner, was obviously predicated on its decision granting Triolo the principal relief he sought. Having reversed as to both the relief granted and the award of attorney's fees to Triolo, we now remand to the trial court for determination of reasonable attorney's fees for MCZ and Turner.

The statement of facts shows testimony by counsel for both MCZ and Turner as to attorney's fees incurred by each of them. MCZ's testimony was appropriately separated as to expense for defense of Triolo's declaratory judgment action and for filing and pursuit of MCZ's interpleader action.

Turner, an outsider to the lease with no influence over its provisions, was forced to defend Triolo's declaratory judgment action, even though Turner was not responsible for payment of royalties to Triolo and had no interest in the creation or terms of the Triolo Unit. Further, Turner lost the use of his royalty proceeds from Triolo tract production held in the court's registry.

Triolo commenced a declaratory judgment action in order to raise a novel question and urge a contention contrary to both the provisions of his own lease and established case law. His lease was dispositive of the issue of who must pay "excess" royalty by its provision for proportionate reduction; further, Triolo demonstrated in his brief his awareness of the settled law that the executory leasing rights owner does not have the power to pool the non-participating royalty owner's interest without the latter's consent.

MCZ abided by the terms of the Triolo lease and promptly filed an interpleader action when Triolo sued demanding royalty not due him under the lease or the pooling agreement. Turner was entitled to rely on the established common law protection afforded non-participating royalty interest owners against appropriation by the owners of executory leasing rights. Having thus created the controversy in his quest to change the established law, Triolo must pay the just and equitable costs and attorney's fees expenses reasonably incurred by those whom he forced into litigation.

Turner's point of error 20 and MCZ's points of error six and seven are sustained,

and the issue of attorney's fees due Turner and MCZ from Triolo is remanded to the trial court for its determination under art. 2524–1, section 10. These rulings render moot Turner's point of error 21, which asserts that MCZ ought to have been required to pay Turner's costs, and MCZ's points of error 13 and 14 disputing Turner's contention. Turner's point of error 21 and MCZ's points of error 13 and 14 are overruled.

MCZ's remaining points of error center on its bill of interpleader and its deposits of disputed royalty into the registry of the court.

Triolo's attorney's advised MCZ, the well operator, by letter of February 28, 1983, that Triolo took the legal position that Turner's ratification of the Philipello Unit constituted a ratification of the Triolo Unit as well, resulting in the "effective" pooling of Turner's Triolo tract interest into the Triolo Unit, thereby reducing the royalty due Turner and increasing that due Triolo. After Triolo's suit was filed asserting Turner's effective ratification and Triolo's right to increased royalty, MCZ advised counsel for Turner and Triolo in writing that MCZ would file its bill of interpleader if the two parties did not agree and stipulate as to their respective interests within five days. MCZ then filed its bill of interpleader, alleging that it was in reasonable doubt as to the proper recipient of the interpled funds, and tendered the disputed royalty funds into the court's registry thereafter on a monthly basis. In its judgment, the trial court awarded the funds to Triolo, and refused attorney's fees to MCZ for its bill of interpleader by denying all relief not expressly granted.

MCZ's points of error 8–11 assert that the trial court erred in failing to grant its bill of interpleader and award its reasonable attorney's fees in connection therewith because: (1) as a matter of law, MCZ was entitled to interplead the disputed royalty; (2) MCZ was merely an innocent stakeholder; (3) MCZ did not create and is not responsible for creation of the controversy; and (4) MCZ acted in good faith in filing its interpleader.

Interpleader is governed by Tex.R.Civ.P. 43:

Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. . . .

Both Triolo and Turner claim MCZ was not entitled to interplead.

Triolo argues that MCZ is not a mere stakeholder but created the controversy by its conduct as lessee in pooling the Triolo tract into the Triolo Unit without first securing the consent or ratification of Turner, the non-participating royalty interest owner. The trial court rejected this theory of recovery, and we have previously overruled Triolo's counterpoint urging this argument. MCZ did not create the controversy; it was paying the royalties due both Triolo and Turner from the two wells in the manner prescribed by law, inasmuch as Turner's interest had not been pooled. Triolo created the controversy by sending the letter of February 28, 1983, and by filing the present lawsuit.

Turner also opposes the interpleader, claiming that the respective shares of production that he and Triolo are to receive from the Triolo tract are separate and distinct obligations, with neither dependent upon what the other receives. This is incorrect. The proportionate reduction clause of the Triolo lease would reduce Triolo's royalty share if Turner's was increased. Turner also incorrectly argues that in order to be entitled to an interpleader, the conflicting claims must "emanate from the same theory of liability." The

text of rule 43 specifically points out that this is not a ground for objection.

Turner's opposition to the interpleader is, in effect, an argument that it is impossible that his limited ratification of the Philipello Unit could be construed to be an effective ratification of the Triolo Unit. The trial court was sufficiently unimpressed with Turner's position that it held—erroneously, we have ruled—that ratification had occurred.

When Triolo's and Turner's initial conflicting claims were asserted, MCZ could not know that the matter would ultimately be submitted to the trial court on an agreed statement of facts, or what decision the trial and appellate courts would render. MCZ was not required to speculate at its peril as to the ultimate decision in the judicial process. *See Parker Square State Bank v. Triangle Supply Co.*, 364 S.W.2d 418, 424 (Tex.Civ.App.1963, writ ref'd n.r. e.). As a disinterested stakeholder with reasonable doubts as to which party was entitled to funds in its possession, MCZ interpleaded the contesting claimants in good faith and was entitled to a reasonable attorney's fee. *United States v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 581 (Tex.1964); *County of Dallas v. Yellow Cab of Dallas, Inc.*, 573 S.W.2d 44, 46 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.) Upon remand, the trial court will determine the reasonable attorney's fee MCZ is entitled to receive, to be paid by Triolo. MCZ's points of error 8, 9, 10, and 11 are sustained.

As set out above, the trial court's award of $29,978.10 to Triolo to be paid by MCZ and the other working interest owners for "excess" production proceeds from the Triolo Unit, less credit for the $12,540.49 deposited by MCZ into the registry of the court, is set aside, as is the judgment over in favor of MCZ and the working interest owners against Turner for the same amount. The recalculation of Triolo's interest in the Triolo Unit at .0483937 of production is set aside. The $12,540.49 paid into the registry of the court by MCZ

under its bill of interpleader is ordered paid to Turner.

The judgment is reversed and remanded to the trial court for hearing and determination of attorney's fees due by Triolo to MCZ and Triolo, and for entry of judgment consistent with this opinion.