Opinion issued August 2, 2016



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-15-00315-CV

———————————————

### CECIL ADAMS AND MAXINE ADAMS, Appellants

### V.

### REBECCA ROSS, Appellee

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Case No. 1044023**

---

## MEMORANDUM OPINION

This is an appeal from a summary judgment enforcing a settlement agreement. Appellants Cecil and Maxine Adams contend that the settlement agreement was not a valid contract. Alternatively, they contend that specific performance was not justified and that the trial court impermissibly altered the settlement terms.

We hold that the agreement is valid and enforceable by specific performance, but that the trial court erred by altering its terms. We therefore affirm in part, reverse in part, and remand this suit for enforcement of the agreement in accordance with its terms.

## Background

In March 2010, appellee Rebecca Ross secured a default judgment against her former tenants, Cecil and Maxine Adams, in a forcible-detainer suit in justice court. Since then the parties have litigated multiple related suits in multiple courts. The Adamses filed the suit underlying this appeal, in which they collaterally attacked the March 2010 default judgment on the grounds that it was obtained by fraud and without service of process.[1] Ross denied their allegations.

In September 2014, the parties mediated their disputes and executed an agreement "to settle all matters arising out of" their prior landlord-tenant relationship, with the caveat that the Adamses retained the right to file an unopposed motion for summary judgment regarding their collateral attack on the prior default judgment, as well as the right to appeal any adverse decision on that motion.

---

[1] A judgment that is void "can be collaterally attacked at any time." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012). Judgments obtained with "a complete failure or lack of service" are void. *Id.* at 273–75. Judgments obtained by a "fraud that denies a losing party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted" also can be collaterally attacked. *Browning v. Prostok*, 165 S.W.3d 336, 347–48 (Tex. 2005).

Otherwise, the agreement required the parties to execute various documents relating to their lawsuits within 21 days. They concluded the agreement with the following capitalized language: "THE PARTIES AGREE THAT THIS AGREEMENT IS BINDING AND IRREVOCABLE. THE PARTIES INTEND TO FULLY SETTLE ALL DISPUTES BETWEEN THEM." Immediately below this language, the Adamses signed the agreement. Ross's counsel represented that he had the authority to sign the agreement on his client's behalf, and he did so.

When the Adamses refused to execute the required documents, Ross amended her answer to assert a counterclaim for breach of contract, and she sought specific performance of the settlement agreement. She subsequently moved for summary judgment on her counterclaim. The motion explicitly stated that Ross sought to enforce the parties' agreement by specific performance and that she was not attempting to prove the invalidity of the Adamses' underlying claims. The Adamses opposed the motion. The trial court granted Ross's summary-judgment motion requesting specific performance, and it rendered a final judgment in her favor. The judgment ordered the Adamses to sign the documents required by the settlement agreement, and it dismissed their collateral attack on the prior default judgment. The Adamses filed a motion requesting that the trial court reconsider its summary judgment, which was denied by operation of law. The Adamses appealed.

**Analysis**

## I.    Appellate jurisdiction

Ross moved to dismiss the appeal for want of jurisdiction as untimely. A party who wishes to appeal to this court generally must file a notice of appeal within 30 days after the trial court signs its judgment, or within 90 days after the trial court signs its judgment if any party files a timely motion for new trial. TEX. R. APP. P. 26.1. We treat a motion for reconsideration that seeks modification or reversal of a judgment as a motion for new trial. TEX. R. CIV. P. 329b(g); *Fox v. Wardy*, 318 S.W.3d 449, 451 n.1 (Tex. App.—El Paso 2010, pet. denied). Motions for new trial or reconsideration must be filed within 30 days after the trial court signs its judgment. TEX. R. CIV. P. 329b(a), (g).

The trial court signed its judgment on January 5, 2015. The Adamses moved to reconsider the judgment on January 30. Their motion therefore was timely and extended the deadline to appeal from the January 5 judgment to 90 days. *See* TEX. R. APP. P. 26.1(a)(1)–(2). On April 2, the Adamses filed their notice of appeal—87 days after the trial court signed its judgment. Thus, the notice of appeal was timely filed, and we deny Ross's motion to dismiss. *See id.*

## II.    Enforceability of settlement agreement

The Adamses contend that the settlement agreement is invalid because Ross's counsel signed it on her behalf. They argue that the Texas Family Code and contract

law required her to personally sign the agreement for it to be binding. In the alternative, the Adamses contend that Ross was not entitled to specific performance because she failed to prove her willingness to perform her part of the agreement. They further contend that the trial court did not enforce the agreement as written and instead impermissibly made a new contract for the parties by ignoring one of its terms.

The trial court granted Ross's traditional motion for summary judgment, which required a demonstration that no genuine issue of material fact existed and that she was entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In determining whether a genuine issue of material fact exists, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). We must confine our review to the grounds for judgment expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339–41 (Tex. 1993).

## A.    Inapplicability of Family Code

The Adamses contend that the trial court erred by failing to apply a signature requirement imposed by Section 153.0071 of the Texas Family Code. They argue

that this statute requires that each party to a mediated settlement agreement sign it in order for the agreement to be valid and binding. Because the applicability of a statute presents a question of law, we review this issue de novo. *Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 130 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Section 153.0071 is part of Title 5 of the Texas Family Code, which concerns the parent-child relationship and suits affecting that relationship. Its party-signature requirement for mediated settlement agreements applies solely to "a suit affecting the parent-child relationship." TEX. FAM. CODE § 153.0071(c), (d)(2). None of the claims in this suit affect a parent-child relationship. Section 153.0071 therefore does not apply to the parties' settlement agreement.

## B.    Validity of signature

The Adamses further contend that the settlement agreement is not valid as a matter of contract law because Ross did not personally sign it. *See* TEX. CIV. PRAC. & REM. CODE § 154.071(a) (a settlement agreement "is enforceable in the same manner as any other written contract"); *Bayway Servs., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (party seeking to enforce a settlement agreement must prove that a "a contract existed between the parties"). They argue that the lawyer's signature on the document is legally ineffective to create a binding contract between them and Ross.

The attorney-client relationship is one of agency, and the default rule is that the attorney's acts are attributable to and binding on the client. *Dow Chem. Co. v. Benton*, 357 S.W.2d 565, 567–68 (Tex. 1962); *Associated Press v. Cook*, 17 S.W.3d 447, 455–56 (Tex. App.—Houston [1st Dist.] 2000, no pet.). When "an attorney has been expressly authorized to bind his client by a compromise or settlement of the claim, such a grant of power is valid in the absence of fraud of the attorney." *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex. 1969). In addition, there is a presumption that an attorney is "acting within the authority given by the client." *Kelly v. Murphy*, 630 S.W.2d 759, 761 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

The Adamses do not allege fraud on the part of the Ross's counsel. Nor is there evidence that rebuts the presumption that Ross's counsel had the authority to sign the settlement on her behalf. To the contrary, the agreement contains a representation that the attorney had "full authority" from Ross "to sign" it and bind her to its terms. This representation is corroborated by Ross's continued request for specific performance of the settlement agreement. Thus, the agreement is a valid, binding contract.

## C.    Specific performance

The Adamses argue that Ross is not entitled to the remedy of specific performance because there is no evidence that she performed or was willing to

perform her obligations under the settlement agreement. *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593–94 (Tex. 2008). Because Ross sought specific performance by summary judgment she was required to prove conclusively her entitlement to this remedy. *See* TEX. R. CIV. P. 166a(c); *see, e.g.*, *Ardmore, Inc. v. Rex Group, Inc.*, 377 S.W.3d 45, 61 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

A party seeking specific performance of a contract need not tender performance or perform her own obligations under the contract if the other party's breach renders tender or performance useless or ineffective. *DiGiuseppe*, 269 S.W.3d at 594; *see also Luccia v. Ross*, 274 S.W.3d 140, 147 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (naked refusal to perform contract by breaching party excuses plaintiff from making presuit tender). To the extent the Adamses breached first by refusing execute settlement documents, Ross was required to prove only that she remained ready, willing, and able to perform her part of the settlement agreement. *See DiGiuseppe*, 269 S.W.3d at 599–603. The agreement required Ross's attorney to prepare certain documents to effectuate settlement. These documents were attached to the motion for summary judgment. The agreement also required Ross or her insurer to pay $19,000 to the Adamses. In an affidavit accompanying the motion for summary judgment, Ross's counsel averred that his client "had the consideration ready to go by a State Farm Check." A voided copy of this check was attached to the summary-judgment motion. In his affidavit, counsel further attested

8

to his efforts to finalize the settlement, stating that the breach-of-contract counterclaim was filed only after the Adamses "ceased to cooperate on the closing of the final settlement with all of its associated documents." Taken together, these circumstances established Ross's readiness, willingness, and ability to fulfill her contractual obligations.

The record is devoid of contrary evidence that would establish a genuine issue of material fact with respect to Ross's readiness, willingness, and ability to perform her part of the settlement agreement. The Adamses argue that Ross's failure to actually sign the papers required by the agreement and have them notarized is proof of her unwillingness to fulfill her contractual obligations. Similarly, they contend that Ross's inclusion of a voided copy of a settlement check with her summary-judgment motion, as opposed to the actual check, is proof of her unwillingness to perform her obligations under the agreement. However, these circumstances— failure to provide notarized signatures or include the actual settlement check—are at best evidence of nonperformance, not unreadiness, unwillingness, or inability to perform. Ross was not required to perform her part of the settlement agreement, given the Adamses' repudiation of the agreement and refusal to settle. *See DiGiuseppe*, 269 S.W.3d at 599–603; *Luccia*, 274 S.W.3d at 147. The evidence noted by the Adamses does not raise a genuine issue of material fact with respect to Ross's readiness, willingness, and ability to perform her obligations under the

9

settlement agreement. Consequently, Ross proved her entitlement to specific performance as a matter of law. We therefore hold that the trial court did not err by determining that Ross was entitled to specific performance of the agreement.

## D.    Implementation of contractual terms

The Adamses contend that the summary judgment impermissibly altered the terms of the parties' settlement agreement, rather than ordering specific performance of its unambiguous written terms. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex. 2006) (when contractual language "'is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction'" (quoting *E. Tex. Fire Ins. Co. v. Kempner*, 27 S.W. 122, 122 (Tex. 1894))). The construction of an unambiguous contract presents a question of law, which we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

The parties' settlement agreement provided that the Adamses would file a motion for summary judgment regarding their collateral attack on the default judgment. Ross agreed not to oppose this motion. The Adamses retained the right to appeal in the event that the trial court denied their unopposed motion.

The summary judgment enforcing the settlement agreement, however, dismissed the Adamses' claims. Thus, while the trial court purported to order specific performance, the judgment disregarded the provisions of the parties'

agreement that carved out the collateral attack for further court proceedings. Under the judgment, the Adamses were denied the contractually agreed opportunity to present an unopposed summary-judgment motion for consideration. The judgment therefore transgressed the well-settled rule that when a court orders specific performance it generally must require "it of both sides, so far as anything is left to be performed." *Lone Star Salt Co. v. Tex. Short Line Ry. Co.*, 90 S.W. 863, 867 (Tex. 1906); *see also Capps v. Joiner*, 69 S.W.2d 853, 855 (Tex. Civ. App.—Texarkana 1934, writ dism'd) ("Mutuality in enforcement as to both parties is essential to support the remedy of specific performance in favor of either party."). The trial court thus erred by ordering specific performance of less than all of the settlement agreement's terms. *See Okon v. Levy*, 612 S.W.2d 938, 943 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) ("The basis for a decree of specific performance must be the agreement of the parties.").

On appeal, Ross contends that, given the Adamses' breach of the settlement agreement, the trial court was entitled to order partial specific performance of its terms. In support, she primarily relies on *English v. Jones*, 274 S.W.2d 666 (Tex. 1955), in which the court approved partial specific performance of a real-estate contract and rejected the contention that ordering partial performance made a new

contract for the parties. *English*, 274 S.W.2d at 668. *English* and the other real-estate contract cases on which Ross relies,[2] however, are readily distinguishable.

In *English*, the plaintiff contracted to purchase land from the defendant, but the defendant owned only a partial interest in the parcel. *Id.* at 667. When the parties executed the contract, the plaintiff justifiably believed that the defendant would be able to convey full title. *Id.* at 669. On these facts, the Supreme Court of Texas affirmed a judgment ordering the defendant to convey the partial interest she held, with a discount to the same purchase price corresponding to the fraction of ownership she did not possess and therefore could not convey. *Id.* at 667–69. *English* and other real-estate cases ordering partial specific performance, however, differ from this case in two significant ways. First, in real-estate cases like *English*, when the ownership rights of third parties preclude complete performance, the only specific performance that can be ordered is partial performance. *See id.* at 669 (discussing interests of third parties that the defendant could not convey). In contrast, no third-party interests bear on the settlement agreement in this case and nothing prevents full performance of its terms as written. Second, when a purchaser seeks partial specific performance of a real-estate contract, the performance ordered by the

---

[2]     In addition to *English*, Ross relies upon *Walzem Dev. Co. v. Gerfers*, 487 S.W.2d 219 (Tex. Civ. App.—San Antonio 1972, writ ref'd n.r.e.), and *Villareal v. De Montalvo*, 231 S.W.2d 964 (Tex. Civ. App—San Antonio 1950, no writ).

courts is incomplete with respect to both sides of the transaction—the seller conveys ownership to the extent of its interest and the buyer pays a reduced purchase price reflecting the incomplete conveyance. *See id.* at 667, 669. Thus, mutuality in enforcement as to both parties exists despite the partial nature of their performance. In contrast, the specific performance ordered in this case lacks mutuality in enforcement. The Adamses lost one of the benefits guaranteed by the settlement agreement (preservation of the collateral attack) while being ordered to fully perform their obligations.

Ross also suggests that we may uphold the trial court's judgment on the ground that the Adamses forfeited their contractual right to present an unopposed summary-judgment motion by failing to file one before the rendition of judgment and by refusing to honor the other provisions of the settlement agreement. However, a "defendant's breach or repudiation should not alter the contract and give the non-breaching party a contract different from what he had." *DiGiuseppe*, 269 S.W.3d at 600. Ross sought specific performance of the agreement, which requires enforcement according to its terms. *See Mun. Gas Co. v. Lone Star Gas Co.*, 259 S.W. 684, 689 (Tex. Civ. App.—Dallas 1924) (specific performance "is the actual accomplishment of a contract"), *aff'd*, 3 S.W.2d 790 (Tex. 1928). To ignore one of its provisions "would be to rewrite the contract." *MCZ, Inc. v. Triolo*, 708 S.W.2d 49, 54 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

We therefore conclude that the trial court erred by dismissing the Adamses' collateral attack on the justice court's default judgment. The basis for an order of specific performance must be the contract. *Okon*, 612 S.W.2d at 943. Dismissal of the Adamses' collateral attack was inconsistent with the settlement agreement, which gave them a right to present an unopposed motion for summary judgment and appeal any adverse ruling. By ordering specific performance of all of the agreement's terms except this one, the judgment impermissibly made a new contract for the parties in the guise of construing it. *See Fiess*, 202 S.W.3d at 753. We therefore sustain the Adamses' objection to the dismissal of their collateral attack.

## III. Motion to vacate

The Adamses filed a motion requesting that this court vacate the justice court's March 2010 default judgment based on the appellate record. Because the parties' settlement agreement provides for presentation of this matter to the trial court in the first instance, we deny the motion.

**Conclusion**

We reverse the dismissal of the Adamses' collateral-attack claims. In all other respects we affirm the judgment. The cause is remanded for enforcement of the parties' valid and binding settlement agreement in accordance with its terms.

Michael Massengale
Justice

Panel consists of Justices Higley, Bland, and Massengale.