Opinion issued September 4, 2008









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00080-CV






PAUL LUCCIA, INDIVIDUALLY & D/B/A CABOT & ROWE, Appellant


V.


KATHRYN L. ROSS, Appellee






On Appeal from the 80th Judicial District

Harris County, Texas

Trial Court Cause No. 2005-32968






O P I N I O N


 In this breach of contract case concerning the sale of real property, appellant,
Paul Luccia, individually and doing business as Cabot & Rowe (Luccia), appeals
from the trial court's summary judgment order rendered in favor of appellee, Kathryn
L. Ross. Luccia, the tenant, filed suit against Ross, the landlord, asserting that Ross
refused to honor the terms of their lease agreement (the "Lease Agreement") that
allowed Luccia to purchase the rental property. Luccia sought specific performance
and attorney's fees. In five issues, Luccia asserts the trial court erred by (1)
construing the Lease Agreement as stating a limit on the time that Luccia could
exercise the option to purchase the property; (2) construing the Lease Agreement as
requiring Luccia to close the sale within the term of the lease; (3) determining that the
option to purchase the property was extinguished by Luccia's failed attempt to
purchase the property; (4) requiring a formal tender of purchase money when Luccia
demonstrated that he was ready, willing, and able to purchase the property; and (5)
failing to determine that it was unnecessary for Luccia to show tender of the purchase
money because Ross was unwilling to sell the property at the contract price.

 We conclude the Lease Agreement did not limit the number of times that
Luccia could attempt to purchase the property, as long the option was taken within
the terms of the lease, which it was. We also conclude that Luccia's evidence
conclusively established that he proved the element of tender, and therefore we
remand to the trial court for consideration of the remaining elements of Luccia's
breach of contract action. We need not address Luccia's fifth issue, in which Luccia
contends that the cause should be remanded for an alternative reason. We reverse the
trial court's judgment and remand this cause for further proceedings consistent with
this opinion.

Background On April 29, 2003, Luccia leased an office building on Montrose Boulevard
in Houston, Texas, from Ross pursuant to the Lease Agreement. The Lease
Agreement expired on July 31, 2005. Section 36 of the Lease Agreement
incorporated the "Special Provisions" attached to the Lease Agreement as "Exhibit
A." Exhibit A provided, in pertinent part,

 SALE PRICE: $502,000.00 - Net Sales Price

 $555,000.00 less rent credit of
$48,000.00 and $5,000.00 deposit

 

 RENTAL CREDIT: Fifty Percent (50%) of rents applied to
sale price. 


 . . . . 

 

 OPTION TO PURCHASE: Anytime with credit on rents prorated.


 On September 30, 2004, Luccia provided written notice to Ross of his desire
to exercise the option to purchase the property under the terms of the Lease
Agreement. Luccia and Ross entered into a contract on December 21, 2004 for sale
of the property (the "Purchase Contract"). The Purchase Contract provided that the
closing would take place by January 31, 2005, and that time was of the essence. The
Purchase Contract provided that Ross could keep Luccia's earnest money of $5,000
as liquidated damages in the event of default. 

 In the Purchase Contract, the parties also agreed to a special provision that
stated,

 The Lease/Purchase Contract executed by parties on April 29, 2003 is
incorporated herein for all purposes and Earnest Money/deposit of
$5,000.00 is incorporated in this sale contract and will be forfeited if
default occurs or closing is after January 1 [sic], 2005, lease payments
will continue on schedule and Lessee/Buyer will reimburse
Lessor/Seller for insurance premiums paid.


Luccia was unable to close the sale by January 31, and as a result of the default, Ross
terminated the Purchase Contract, taking the $5,000 as liquidated damages.

 After Luccia failed to meet the January 31 deadline, he made a second attempt
to purchase the property under the option to purchase portion of the Lease
Agreement. Luccia secured approval for a loan to purchase the property. The
mortgage broker sent a letter to Ross informing her of the approval and requesting a
final payoff amount so that a closing could be scheduled. Luccia notified Ross of his
intent to purchase the property by sending notice to Ross that, pursuant to the option
to purchase the property, "financing has been approved and that a May 15, 2005
closing date has been set." Luccia's attorney also sent a letter to Ross's attorney
stating,

 Please allow this letter to serve as notice of Mr. Paul Luccia's
unconditional and unqualified acceptance of the "option to purchase
anytime with credit on rents prorated" as provided in Exhibit A of the
commercial lease executed by your client, Ms. Ross, and my client, Paul
Luccia, in connection with certain real property located at 3209
Montrose Blvd. in Houston, Texas. Mr. Luccia is ready, willing and
able to meet his obligation with closing set for May 15, 2005.


 Ross declined to sell the property to Luccia, contending that a "new contract
with new terms" would be necessary. Luccia responded to Ross's refusal to sell by
filing this suit for breach of contract, seeking the remedy of specific performance or,
alternatively, damages. Ross counterclaimed seeking a declaration that Luccia had
no right to exercise the option and also seeking damages for Luccia's breach of
contract for failing to meet the terms of the original Lease Agreement. Specifically,
Ross alleged that

 Luccia breached the Lease by his (i) failure to timely pay rentals when
due and (ii) by doing certain damage to the Leased Premises upon his
vacating of the Leased Premises. Ross faithfully performed her
obligations under the Lease and Luccia breached his obligations. Luccia
failed to pay rent due for the months of June and July, 2005, in the sum
of $8,366.39. Rental, with insurance payment was $4,256.08 per month. 
Luccia paid only $145.77 for those two months. As a result of Luccia's
breach of the Lease Ross has sustained damages for plumbing repairs
and clean up caused by a flood when the water was turned on after
Luccia vacated the leased premises. The damages were caused by faulty
plumbing work which Luccia had performed. All conditions precedent
to recovery have been performed or have occurred. Ross also seeks to
recover her attorney's fees in connection with this action, in an amount
of at least $50,000.00.


Also, in her prayer, Ross requested "recovery of damages as a result of Luccia's
breach of the Lease."

 Ross filed a motion for summary judgment challenging Luccia's breach of
contract lawsuit for the refusal to sell the property. Ross's motion, as amended,
asserted that (1) Ross satisfied her obligations under the Lease Agreement when
Luccia exercised the option to purchase in the attempted sale of the property that
never closed, and Ross was no longer required to give Luccia a second opportunity
to exercise the option to purchase; and (2) the evidence was undisputed that Luccia
failed to timely tender the price due in a purchase contract, which therefore precluded
Luccia's right to obtain specific performance that would require that the sale of the
property take place. The sole assertion in Luccia's motion for summary judgment
was that the terms of the Lease Agreement allowed him to have multiple attempts to
exercise the option to purchase the property, and that the only limitation was the
limitation that the option be taken during the term of the lease. Within this issue,
Luccia raised the same issues in the motion for summary judgment as in this appeal,
that the option survived the failed closing of the Purchase Contract and that actual
tender was not required.

 The trial court granted Ross's amended motion for summary judgment,
rendering judgment that Luccia take nothing against Ross. Further, the trial court's
order "adjudged and decreed that all claims to any option, right to purchase or other
interest in or claim asserted by [Luccia] to certain property located at 3209 Montrose
. . . be and is hereby removed as clouds on [Ross's] title to such real property
described above." The trial court did not specify the grounds on which it granted
summary judgment. The trial court later severed Ross's breach of contract claim into
a separate cause of action. (1) 

Summary Judgment Standard of Review

 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). As here, when both sides move for summary
judgment and the trial court grants one motion and denies the other, we review the
summary judgment evidence presented by both sides and determine all questions
presented. Comm'rs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); Cigna Ins. Co.
v. Rubalcada, 960 S.W.2d 408, 411-12 (Tex. App.--Houston [1st Dist.] 1998, no
pet.). We render such judgment as the trial court should have rendered. Agan, 940
S.W.2d at 81; Rubalcada, 960 S.W.2d at 412. When, as here, a summary judgment
does not specify the grounds on which it was granted, we will affirm the judgment if
any one of the theories advanced in the motion is meritorious. Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).

 Summary judgment is proper only when a movant establishes that there is no
genuine issue of material fact and that the movant is entitled to judgment as a matter
of law. Tex. R. Civ. P. 166a(c). A motion must state the specific grounds relied upon
for summary judgment. Id. In reviewing a summary judgment, we must indulge
every reasonable inference in favor of the nonmovant, take all evidence favorable to
the nonmovant as true, and resolve any doubts in favor of the nonmovant. Valence
Operating Co., 164 S.W.3d at 661.

Breach of Contract Law


 All of Luccia's issues challenge the trial court's summary judgment in favor
of Ross that determined that there was no breach of contract.

 We apply well-established rules of contract interpretation when construing the
Lease Agreement. See Huntley v. Enon Ltd. P'ship, 197 S.W.3d 844, 849 (Tex.
App.--Fort Worth 2006, no pet.). Specifically, when construing a written contract,
our primary concern is to ascertain the true intent of the parties as expressed in the
instrument. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). We must examine
and consider the entire contracts in an effort to harmonize and give effect to all
provisions so that none are rendered meaningless. J. M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 229 (Tex. 2003); Coker, 650 S.W.2d at 393. If the written
instrument is so worded that it can be given a definite or certain legal meaning, then
the contract may be construed as a matter of law. Coker, 650 S.W.2d at 393.

 All contractual provisions should be considered with reference to the entire
instrument, and no single provision taken alone should be controlling. J. M.
Davidson, 128 S.W.3d at 229. A simple lack of clarity or disagreement between
parties does not render a term ambiguous. See DeWitt County Elec. Coop., Inc. v.
Parks, 1 S.W.3d 96, 100 (Tex. 1999). Rather, an ambiguity arises only after the
application of established rules of construction leaves an agreement susceptible to
more than one meaning. Id. For an ambiguity to exist, both potential meanings must
be reasonable. Id. Whether a contract is ambiguous is a question of law for the trial
court to decide by looking at the contract as a whole in light of the circumstances
present when the contract was entered. Coker, 650 S.W.2d at 394.

 Luccia filed suit for breach of contract, seeking specific performance of the
option to purchase contained in the Lease Agreement and, alternatively, damages. 
Specific performance is an equitable remedy that may be awarded upon a showing of
breach of contract. Stafford v. S. Vanity Magazine, Inc., 231 S.W.3d 530, 535 (Tex.
App.--Dallas 2007, pet. denied) (citing Kress v. Soules, 261 S.W.2d 703, 704 ( Tex.
1953)). The essential elements of a breach of contract claim are: (1) the existence of
a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach
of the contract by the defendant; and (4) damages sustained by the plaintiff as a result
of the breach. Valero Mktg. & Supply Co. v. Kalama Int'l, 51 S.W.3d 345, 351 (Tex.
App.--Houston [1st Dist.] 2001, no pet.).

 A party seeking specific performance must show that he is ready, willing, and
able to perform the contract. Stafford, 231 S.W.3d at 535 (citing Am. Apparel Prods.,
Inc. v. Brabs, Inc., 880 S.W.2d 267, 269 (Tex. App.--Houston [14th Dist.] 1994, no
writ)); Chessher v. McNabb, 619 S.W.2d 420, 421 (Tex. Civ. App.--Houston [14th
Dist.] 1981, no writ). However, when the other party clearly refuses to perform his
part of a contract, the party who seeks specific performance need not tender
performance before bringing suit. 17090 Parkway, Ltd. v. McDavid, 80 S.W.3d 252,
256 (Tex. App.--Dallas 2002, pet. denied). Even when tender of performance is
excused, a party must plead and prove he is ready, willing, and able to perform. Id.;
Chessher, 619 S.W.2d at 421; Hendershot v. Amarillo Nat'l Bank, 476 S.W.2d 919,
920 (Tex. Civ. App.--Amarillo 1972, no writ). When a party seeks to prove it is
ready, willing, and able to perform under the terms of a contract, but is unable to
prove it has a firm commitment for financing, that party is not entitled to specific
performance of the contract. Hendershot, 476 S.W.2d at 921.

 The elements at issue in this case are (1) the existence of a valid contract,
specifically, whether the option survived the failed January 31, 2005 closing of the
Purchase Contract, and (2) performance or tendered performance by Luccia.

Requirements for Exercising Option to Purchase in Lease Agreement 

 The parties dispute whether the option to purchase in the Lease Agreement
allowed Luccia more than one attempt to close the sale. In other words, the parties
disagree whether the Purchase Contract that was to be closed on January 31, 2005
was the only time that the option to purchase could be exercised, or whether Luccia
could again exercise the option to purchase during the period of time after the failed
January 31closing and the end of the lease six months later on July 31. In his first,
second, and third issues, Luccia contends the trial court erred by rendering judgment
in favor of Ross because the plain, unambiguous language of the Lease Agreement
allows him to exercise the option to purchase anytime during the lease term and the
failure to close the Purchase Contract did not extinguish the option. Ross responds
that once Luccia exercised the option, the relationship between Luccia and Ross
became one of vendor and purchaser. We address these issues together because they
are all premised on the same question--whether Luccia could exercise the option to
purchase more than once.

 Luccia contends that because the Lease Agreement does not specify an exact
time for the exercise of the option, it may be exercised at any time during the lease
term, even though he defaulted on the Purchase Contract entered into as a result of
his exercise of the option. Ross responds that once Luccia exercised the option and
defaulted under the Purchase Contract, the option right terminated. We disagree with
Ross, because the plain terms of the agreement do not limit the number of times that
Luccia can exercise the option to purchase the property, other than to require that the
options be exercised during the term of the lease.

 Ross cites to no authority to support her position that the option to purchase
expires when it is exercised once. Further, the authority relied on by Ross, Sinclair
Refining Co. v. Allbritton, 218 S.W.2d 185 (Tex. 1949), is inapplicable. In Sinclair,
the supreme court stated, "But in the usual case, whatever the practical object of the
notice requirement, the act of delivering the notice, if performed within the time limit
and not otherwise invalid, forthwith converts the option into a contract of purchase
and sale." Sinclair, 218 S.W.2d at 188 (emphasis added). We agree with Sinclair
that, in general, a party's notice that he is exercising the option to purchase makes
that agreement into a contract of purchase and sale. See id. Here, Luccia's exercise
of the option to purchase resulted in the contract of purchase and sale that described
the terms of the sale. The Purchase Contract merely stated that the Lease Agreement
"is incorporated herein for all purposes." Nothing in the Purchase Contract dissolved
any of the terms in the Lease Agreement. Thus, if the Purchase Contract did not close
for any reason, the parties were still bound to the terms of the Lease Agreement that
included the option to purchase.

 Ross alternatively contends that the Purchase Contract modified the option
contained in the Lease Agreement. Ross did not raise this as a ground in her
Amended Motion for Summary Judgment. We therefore do not address it. See Tex.
R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific
grounds therefor."); McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341
(Tex. 1993) (summary judgment motion "must stand or fall on the grounds expressly
presented in the motion"). We also note, however, that the Purchase Contract
incorporated the Lease Agreement for all purposes, thus stating that the Lease
Agreement remained viable along with the terms of the Purchase Contract. 

 The plain language of the Lease Agreement does not provide that the option
offers a one-time-only chance to Luccia. The option expressly states "Anytime with
credit on rents prorated." (Emphasis added). The reference to the rents indicates the
option was tied to the lease term. "Unless the option contains provisions to the
contrary all that is required of the optionee is that he notify the optionor, prior to the
expiration of the option, of his decision to exercise the option." W. Fed. Sav. and
Loan Ass'n v. Atkinson Fin. Corp., 747 S.W.2d 456, 461 (Tex. App.--Fort Worth
1988, no writ) (citing Odum v. Sims, 609 S.W.2d 881, 882 (Tex. Civ. App.--San
Antonio 1980, no writ); San Antonio Joint Stock Land Bank v. Malcher, 164 S.W.2d
197, 200 (Tex. Civ. App.--San Antonio 1942, writ ref'd w.o.m.)). "Optionee
thereafter has a reasonable time within which to complete the deal." Id. Because the
Lease Agreement expressly allowed the option to be exercised anytime, the only time
limitation was the expiration of the lease, and thus the Lease Agreement allowed
Luccia to exercise the option between the period of time after the failed closing on
January 31 and the end of the lease six months later on July 31. Although the trial
court did not state its reasons for granting the summary judgment, it would have erred
by granting summary judgment on the ground that the option expired after Luccia
defaulted on the Purchase Contract. We sustain Luccia's first, second, and third
issues.

Tender of the Purchase Price

 

 Having determined that the Lease Agreement permitted Luccia to exercise the
option to purchase during the term of the lease, we must next determine whether
Luccia's conduct between January 31, 2005 and the end of the lease on July 31, 2005
was sufficient to exercise the option. In his fourth issue, Luccia contends that the trial
court erred by rendering summary judgment for Ross because "formal tender of
purchase monies is an unnecessary formality as a matter of law when an optionee has
demonstrated that he was ready, willing and able to purchase and communicated this
fact to the seller."

A. Applicable Law

 Once an option has been exercised, a contract exists. See Sinclair, 218 S.W.2d
at 188. The parties owe mutual and concurrent obligations--the optionee is obligated
to pay the purchase price and the optionor is required to execute a deed. See Kenver
Corp. v. Robinson, 492 S.W.2d 317, 320 (Tex. Civ. App.--Beaumont 1973, writ ref'd
n.r.e.) (citing Perry v. Little, 419 S.W.2d 198, 200 (Tex. 1967)). In Perry, the
supreme court stated the rule regarding tender in such situations as follows:

 The rule governing this case is expressed in 6 Williston on Contracts,
(3rd ed.) s[ection] 833:


 "It is said that the strict rules of tender are not applicable to a conditional
offer to perform a concurrent condition; that what is essential is that it
shall appear to the court and shall have been made clear to the other
party to the contract that the exchange agreed upon would be carried out
immediately if the latter would do his part. This requirement involves
both ability on the part of the plaintiff to perform and an indication of
that ability to the other party. The actual production of the money or
other thing which the plaintiff is to give is said to be unnecessary.

 

 "As the courts have said 'the word "tender" as used in connection with
such a transaction, does not mean the same thing as when used with
reference to the offer to pay money where it is absolutely due, but only
a readiness and willingness to perform in case of the concurrent
performance by the other party, with present ability to do so, and notice
to the other party of such readiness.'"


Perry, 419 S.W.2d at 200. (2) "The term 'tender' means to notify the other party that
one intends to perform one's side of the bargain immediately or at a specific time and
place and to demand that the other party do likewise." Roundville Partners, L.L.C.
v. Jones, 118 S.W.3d 73, 79 n.7 (Tex. App.--Austin 2003, pet. denied) (citing Perry,
419 S.W.2d at 200-01); see also Bavarian Pastry Shop, Inc. v. Bavarian Bakeries,
Inc., No. 05-94-01002-CV, 1995 WL 702571, at *2 (Tex. App.--Dallas Nov. 22,
1995, no writ) (stating that tender requires "(1) readiness and willingness to perform
in case of the concurrent performance by the other party; (2) a present willingness to
do so; and (3) notice to the other party of such readiness") (citing Perry, 419 S.W.2d
at 200). 

B. Analysis

 Luccia contends that he had the ability to perform and gave an indication of
that ability to Ross, which is sufficient tender under Perry. See 419 S.W.2d at 200. 
Ross does not directly address Luccia's issue. Instead, Ross contends that, because
the Purchase Contract replaced the option right contained in the Lease Agreement,
that the "time is of the essence" clause in the Purchase Contract meant that only
actual tender within the time set forth in the Purchase Contract would suffice.

 Here, the undisputed evidence shows that Luccia communicated his willingness
and ability to perform under the Lease Agreement. Luccia sent notice to Ross that,
pursuant to the option to purchase the property under the Lease Agreement,
"financing has been approved and that a May 15, 2005 closing date has been set." 
Luccia's attorney also sent a letter to Ross's attorney stating,

 Please allow this letter to serve as notice of Mr. Paul Luccia's
unconditional and unqualified acceptance of the "option to purchase
anytime with credit on rents prorated" as provided in Exhibit A of the
commercial lease executed by your client, Ms. Ross, and my client, Paul
Luccia, in connection with certain real property located at 3209
Montrose Blvd. in Houston, Texas. Mr. Luccia is ready, willing and
able to meet his obligation with closing set for May 15, 2005.


The summary judgment evidence also includes an "OK TO CLOSE FORM" showing
that Luccia had obtained financing in excess of the purchase price provided for in the
Lease Agreement. We conclude that evidence shows that Luccia made sufficient
tender by notifying Ross of his ability and willingness to pay the purchase price under
the option to purchase. See Perry, 419 S.W.2d at 200; Roundville Partners, L.L.C,
118 S.W.3d at 79 n.7.

 We sustain Luccia's fourth issue.

 Having determined that the summary judgment must be reversed, we need not
address Luccia's fifth issue presented in which he presents an alternative reason for
reversing the trial court's judgment.

Conclusion

 We reverse the summary judgment rendered in favor of Ross and remand this
cause. All pending motions are dismissed as moot. 




 Elsa Alcala

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.
1. The trial court did not dispose of Ross's breach of contract claim, nor did it sever that
claim when the case was originally appealed to us. At oral argument, this Court
expressed concern to the parties that it may lack jurisdiction over this appeal. See
Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2001) (summary judgment
order that does not dispose of all parties and issues is interlocutory and not
appealable). After oral argument, the trial court severed Ross's claim for breach of
contract into a separate cause number. We therefore treat Luccia's notice of appeal,
filed before the trial court entered an appealable order on the motion for summary
judgment, as prematurely filed, and conclude that we have jurisdiction over this
appeal. See Tex. R. App. P. 27.2 ("The appellate court may treat actions taken before
an appealable order is signed as relating to an appeal of that order and give them
effect as if they had been taken after the order was signed."); Iacono v. Lyons, 6
S.W.3d 715, 716 (Tex. App.--Houston [1st Dist.] 1999, no pet.).
2. The current version of Williston states the rule in very similar language:


 It is said that the strict rules of tender, in the sense of a tender of money
or property sufficient to discharge a contract, are not applicable to a
conditional offer to perform a concurrent condition; that what is
essential is that it shall appear to the court and shall have been made
clear to the other party to the contract that the agreed upon exchange
would be carried out immediately if the other party performs. This
requirement involves both ability on the part of the plaintiff to perform
and an indication of that ability to the other party. The actual
production of the money or other consideration is generally held to be
unnecessary.

 

 As the courts have said, "the word 'tender,' as used in connection with
such a transaction, does not mean the same thing as when used with
reference to the offer to pay money where it is absolutely due, but only
a readiness and willingness to perform in case of the concurrent
performance by the other party, with present ability to do so, and notice
to the other party of such readiness." 


 Richard A. Lord, Williston on Contracts § 47:5 (4th ed. 2001).