Opinion issued July 9, 2009



 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00117-CV






JOSE RAUL JIMENEZ, Appellant


V.


THERESA DUNHAM, Appellee






On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No. 2004-42113






MEMORANDUM OPINION

 

 Appellant Jose Raul Jimenez appeals from a take-nothing judgment in a suit
for breach of contract. In his sole issue, Jimenez argues that the evidence presented
at trial was factually insufficient to sustain the jury's verdict that appellee did not
breach the contract. 

 We affirm the judgment of the trial court. 

Background

 On February 14, 2002, Jimenez agreed to purchase the Kool City Tejano Night
Club in Houston, Texas from appellee Theresa Dunham. The parties made, in
relevant part, the following contract:

 THIS AGREEMENT made this 14th day of February 2002 by and
between Teresa Dunham (seller), and Jose Raul Jimenez (buyer).

 

 I. That in consideration of the mutual agreements to be kept
and performed on the part of both parties [Jimenez] does
hereby agree to pay [Dunham] and [Dunham] agrees to
accept $65,000 as total purchase price for Kool City Tejano
Night Club (a.k.a. Doc Holidays) payable as follows:

 

 A. $20,000 as down payment for buying Kool City
Tejano Night Club (a.k.a. Doc Holidays).

 

 B. $45,000 Balance to be paid weekly/monthly payments.

 II. This sale is conditional upon the following terms:

 A. [Jimemez] agrees to pay the $2,000.00 monthly rent
of Kool City Tejano Night Club (a.k.a. Doc
Holidays).

 

 B. [Jimenez] shall pay for all utilities.


 C. [Jimenez] shall be responsible for the Beer and
Liquor Taxes as they become due.

 

 D. [Jimenez] shall be responsible for all damages to
property above, and or missing, destroyed etc.

 

 III. Other terms to be observed by and between the parties
[a]forementioned above:

 

 A. If [Jimenez] cannot stand by his agreement on this
legal document, he shall forfeit all monies that have
been transacted between both parties above.

 

 B. [Jimenez] shall leave the Beer and Liquor inventory
up to par as was from the ending inventory of
February 2002.


 C. [Jimenez] agrees to be responsible for the entire
operation of Kool City Tejano Night Club (a.k.a.
Doc Holidays). Also for any and all things relating
to the above establishment including maintenance of
equipment.

 

 D. [Dunham] agrees to the above, so long as [Jimenez]
keeps his agreement, and makes consistent payments
as mentioned above.

 

 IV. Other Terms

 

 [Jimenez] shall be responsible for all fines.


 Jimenez and Dunham also agreed that the nightclub's liquor license would
remain in Dunham's name until its expiration in October 2002. They also agreed that
the nightclub's utility bills would remain in Dunham's name. During the performance
of the agreement, Jimenez made a $20,000 down payment in February 2002 and at
least 5 monthly rent payments of $2,000 for March 2002, April 2002, May 2002, June
2002, and July 2002. He also paid Dunham reimbursements for the utility expenses
incurred during the contract performance.

 In September 2002, Dunham and Jimenez had a disagreement regarding the
nightclub's monthly rent payments and utility expenses, and Jimenez threatened to
file suit against Dunham. On August 9, 2004, Jimenez filed suit against Dunham
alleging that Dunham had breached the contract. Dunham filed a counterclaim
alleging that Jimenez had breached the contract, Dunham amended her counterclaim
on May 27, 2005. 

 In the first trial, the jury found that Dunham breached the contract and awarded
Jimenez $100,000 in damages. Dunham filed a motion for judgment notwithstanding
the verdict. The trial court denied Dunham's motion, but it set aside the jury's verdict
and ordered a new trial.

 The second trial began on October 30, 2007. At trial, Jimenez testified that, in
addition to the $20,000 down payment, he made eight monthly rent payments to
Dunham totaling $16,000. He testified that he made the first two or three payments
without receiving a receipt from Dunham. He testified that he also gave Dunham
money to pay for the nightclub's utility expenses and that he made significant repairs
to the nightclub as well. Jimenez presented copies of cancelled checks made for rent
payments through July 2002 totaling $10,000. He also presented copies of cancelled
checks for utility expenses totaling $4,812.68.

 Jimenez testified that, on September 5, 2002, Dunham "locked me out" of the
nightclub. He testified that she later told him that "her boyfriend [did] not want me
to have, to have the club. She--when I had the club, she always come [sic] and tell
me she want the club back. In several occasion[s] told me that." He testified that he
did not voluntarily relinquish control of the nightclub. Dunham locked him out of the
club by changing the locks on the club.

 Jimenez also testified that Dunham later proposed that they become partners
in the business and that he agreed to form a partnership with her, but that after they
agreed to form the partnership, she continued to lock him out of the nightclub. He
also testified that he made a $2,510 payment on September 3, 2002 to Dunham to
"share expenses" associated with the operation of the club and that he made a memo
note on the face of the check that this payment was for "shar[ing] 50/50 Kool City
expenses." He testified that he never paid Dunham a fee to use her liquor license
while operating the club.

 On cross examination, Jimenez testified that the nightclub made no profits
during the 7 months he controlled it. He also testified that he made the July 2002 and
August 2002 monthly rental payments in cash. He testified that he never failed to
make the monthly rental payments, as required under the contract.

 Dunham testified that Jimenez had failed to make any monthly rental payments
after July 2002. She also testified that, on August 7, 2002, Jimenez relinquished his
keys to the nightclub and told her he no longer wanted to own the club. On
September 3, 2002, Jimenez gave her a check for $2,510.00 to reimburse her for
various expenses the nightclub had incurred while he was operating it. She testified
that, on September 3, 2002, she proposed that they form a partnership to operate the
club and that Jimenez agreed to form a partnership. Jimenez later returned to the
nightclub in September 2002 to discuss the allocation of expenses. During the
discussion, Jimenez told her he planned to file suit against her, effectively dissolving
the partnership. Dunham stated:

 I don't think him [sic] or I actually literally breached the contract,
because I didn't throw him out. We kind of came to an agreement
because we both didn't have money. And neither party--he doesn't
want to admit to it, which is fine with me, but I will admit to it. That's
why we were going to go into--but it never got, you know, put down. 
That's why he gave me back the club. 


Dunham presented copies of the nightclub's utility bills and tax bills. 

 In rebuttal, Jimenez testified that he made monthly rental payments for July
2002 and August 2002. He also testified that the $2,510 payment on September 3,
2002 was a monthly rental payment and not a reimbursement for expenses previously
incurred while he was operating the nightclub. 

 The trial court charged the jury with answering four questions. The jury
answered "no" to the first question: "Did [Dunham] breach the agreement?" Because
the jury answered "no" to the first question, it did not answer the second question
regarding Jimenez's damages. 

 The jury answered "yes" to the third question: "Did [Jimenez] breach the
agreement?" Because the jury answered "yes" to the third question, it answered the
fourth question regarding Dunham's damages. The jury found that Dunham suffered
no damages and assessed her damages as zero. 

 On November 15, 2007, Jimenez filed a motion for new trial and for judgment
not withstanding the verdict. On January 14, 2008, the trial court denied Jimenez's
motions. On February 13, 2008, Jimenez filed his notice of appeal.

Factual Sufficiency

 In his sole issue, Jimenez argues that the evidence presented at trial was
factually insufficient to sustain the jury's finding that Dunham did not breach the
contract. Jimenez argues that the $2,510 payment made to Dunham on September 3,
2002 was a monthly rental payment for September 2002 and that Dunham locked him
out of the club on or about September 5, 2002, thereby breaching the contract. 

 Standard of Review

 When reviewing a jury verdict to determine the factual sufficiency of the
evidence, a court of appeals must consider and weigh all the evidence, and it should
set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); El Expresso, Inc. v. Zendejas, 193 S.W.3d 590, 596 (Tex. App--Houston [1st
Dist.] 2007, no pet.).

 Breach of Contract

 The essential elements in a suit for breach of contract are that: (1) a valid
contract existed; (2) the plaintiff performed or tendered performance; (3) the
defendant breached the contract; and (4) the plaintiff was damaged as a result of the
breach. Luccia v. Ross, 274 S.W.3d 140, 146 (Tex. App.--Houston [1st Dist.] 2008,
pet. denied). At trial, Jimenez testified that he made a $2,510.00 payment to Dunham
on September 3, 2002 as a monthly rental payment and not as reimbursement for
expenses previously incurred while he was operating the nightclub. He also testified
that he made a memo note on the face of the September 3 check, stating that the
payment was for "shar[ing] 50/50 Kool City expenses." He testified that Dunham
changed the locks on the nightclub and locked him out of the club on or about
September 5, 2002, preventing him from completing the payment schedule and from
performing under the contract, and thereby breaching the contract. 

 However, Dunham presented conflicting testimony that Jimenez failed to make
any rent payments after July 2002 and that he voluntarily relinquished control of the
club on August 7, 2002 by giving Dunham the keys to the nightclub and telling her
he no longer wanted to own the club, breaching the contract between them. She
testified that, contrary to Jimenez's testimony, Jimenez gave her the $2,510.00
payment on September 3, 2002 as reimbursement for expenses previously incurred
while he operated the nightclub. 

 Jimenez has failed to provide any discussion of the facts or any legal authority
to substantiate his claim that the evidence was factually insufficient to sustain the
jury's finding that Dunham did not breach the contract. He merely reiterated his jury
argument that Dunham's locking him out of the club constituted a breach. Without
more, Jimenez has failed to demonstrate that the jury's finding that Dunham did not
breach the contract was so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust. See Cain, 709 S.W.2d at 176; El Expresso, Inc., 193
S.W.3d at 596. 

 We overrule Jimenez's sole issue.

Conclusion

 We affirm the judgment of the trial court. 




 Evelyn V. Keyes

 Justice


Panel consists of Justices Keyes, Hanks, and Bland.