**Opinion issued November 1, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-01041-CV

_____

## TWO BRIARLAKE PLAZA LP F/K/A BEHRINGER HARVARD BRIARLAKE LAND LP, Appellant

## V.

## SAMSUNG ENGINEERING AMERICA, INC., Appellee

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-24793**

---

### MEMORANDUM OPINION

This appeal is from the trial court's summary judgment in a declaratory judgment action to construe provisions of a commercial lease relating to subletting of parking spaces. The tenant, Samsung Engineering America, Inc., contends that the lease permits parking spaces to be assigned to a sublessee along with the sublease

of office space. The landlord, Two Briarlake Plaza LP f/k/a Behringer Harvard Briarlake Land LP ("Briarlake"), on the other hand, argues that Samsung must obtain separate consent for the assignment of parking spaces unless Samsung is subleasing office space to an affiliate, for which Briarlake's consent is not required. The parties filed cross-motions for summary judgment, and the trial court entered a declaratory judgment in favor of Samsung. Briarlake argues that the trial court erred because the lease is unambiguous and Briarlake's interpretation of the lease is the only reasonable interpretation, or, in the alternative, the lease is ambiguous. Because we conclude the lease is unambiguous and permits Samsung to assign parking when it sublets office space, we affirm.

## Background

In May 2012, Samsung signed a 12-year lease for approximately 160,000 rentable square feet of office space located in Two Briarlake Plaza, a commercial office building in the Westchase area of Houston. The lease allotted Samsung four parking spaces in the building's parking facility for every 1,000 rentable square feet leased, which amounted to over 600 parking spaces.

After the lease was signed, a dispute arose regarding the terms under which Samsung could assign parking spaces to a sublessee. The summary-judgment record contains sparse information regarding how the dispute arose, but it reflects that Samsung sued Briarlake for a declaratory judgment to construe provisions of the

2

lease in April 2015. Samsung sought a declaration that pursuant to paragraph 7 of Exhibit D of the lease, it was permitted to assign parking spaces in correlation to the amount of any subleased office space and Briarlake could not terminate parking spaces assigned in this fashion. Essentially, Samsung took the position that the lease provided for the assignment of parking spaces along with any sublease of office space. Relatedly, Samsung argued that Briarlake could terminate its right to parking spaces under paragraph 7 only if Samsung tried to assign parking spaces apart from an office space sublease without Briarlake's consent.

Exhibit D of the lease governs parking. Paragraph 7 provides:

Except as otherwise provided for in Section 14, Tenant shall not assign or sublease any of the [Parking] Spaces without the consent of Landlord. Landlord shall have the right to terminate the parking agreement with respect to any Spaces that Tenant desires to sublet or assign.

Section 14 of the lease, titled "Tenant Transfers," permitted Samsung to sublet office space to an affiliate without Briarlake's consent, and to a non-affiliated entity with Briarlake's consent. Section 14 defines a transfer as any "[s]ublease of all or part of the Premises, or assignment, mortgage, hypothecation or other conveyance of an interest in this Lease." Paragraph 14.3 provides that Samsung may sublease office space to an affiliate of Samsung without Briarlake's prior consent. Paragraph 14.4 provides that a sublease of office space to a non-affiliated entity requires Briarlake's prior written consent. Paragraph 14.4 also sets forth the procedure by which

3

Samsung obtains this consent and sets forth the grounds upon which Briarlake may withhold consent. The proposed assignment of parking spaces along with a sublease of office space is not grounds for withholding consent to a sublease of office space.

In June 2015, Briarlake counterclaimed for its own declaratory judgment. Briarlake sought a declaration that under paragraph 7, any assignment or sublease of parking spaces by Samsung to a non-affiliate required Briarlake's separate consent. Briarlake also sought a declaration that it had an unqualified right to terminate Samsung's right to any parking spaces Samsung desired to sublet or assign. In essence, Briarlake argued that Samsung was entitled to assign parking spaces only when it sublet office space to an affiliate. In all other circumstances, Briarlake argued that Samsung was required to obtain its separate consent to assignment of parking spaces, whether those parking spaces were included in a sublease to a non-affiliated entity, or were being assigned independent of a sublease of office space. Briarlake also argued that, in addition to this consent requirement, it had an unqualified right under paragraph 7 to terminate Samsung's right to any parking spaces that Samsung desired to assign or sublet in any circumstance, even when the parking spaces were assigned in connection with an authorized office space sublease.

In July 2015, Samsung sublet 4,034 square feet of its office space to Trident Retail Energy, LLC. The written sublease gave Trident the right to use four parking spaces per 1,000 rentable square feet subleased (16 parking spaces), corresponding

4

to the ratio of spaces allotted per 1,000 square feet under its lease. After it received a copy of the sublease, Briarlake notified Samsung on July 14, 2015 that it was terminating Samsung's right to the 16 parking spaces assigned to Trident.

In August 2015, Samsung moved for summary judgment, and Briarlake responded and filed a cross-motion on its claim. Each party argued that the lease was unambiguous and its interpretation of the lease was the only reasonable one. In the alternative, each party argued that the lease was ambiguous and should be interpreted by reference to parol evidence.

The trial court held a hearing on the cross-motions, denied Briarlake's motion, and granted Samsung's motion. The parties entered into an agreement regarding the amount of attorney's fees to be awarded, and the trial court entered a final judgment awarding Samsung attorney's fees and stating:

> It is ORDERED, ADJUDGED, and DECREED that, pursuant to the express, unambiguous language of the Office Lease, any transfer or sublease by Samsung pursuant to Section 14 of the Lease is excepted from the application of paragraph 7 of Exhibit D of the Lease, such that Samsung is free to assign or transfer parking spaces in correlation to the amount of lease space sublet by Samsung and that Briarlake is prohibited from terminating any parking spaces allotted to Samsung that Samsung transfers or subleases to a third party.

Briarlake appealed.

**Discussion**

In its first issue, Briarlake contends that the trial court erred by granting summary judgment in favor of Samsung because the lease is unambiguous and Briarlake's interpretation of the lease is the only reasonable interpretation.

## A.    Standard of Review

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

In a traditional summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A party moving for summary judgment on one of its own claims must conclusively prove all essential elements of the claim. *See Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). A defendant may also prevail by traditional summary judgment if it conclusively negates at least one essential element of a plaintiff's claim or conclusively proves an affirmative defense. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). A matter is

conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary-judgment evidence supporting both motions and "render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

**B.  Applicable Law**

We interpret a lease using ordinary principles of contract interpretation as we would any other contract. *See Luccia v. Ross*, 274 S.W.3d 140, 146 (Tex. App.— Houston [1st Dist.] 2008, pet. denied). "We construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (internal quotations omitted). If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law. *Id.*

When interpreting a contract, we must ascertain and give effect to the contracting parties' "intent expressed in the text as understood in light of the facts

and circumstances surrounding the contract's execution, subject to the limitations of the parol-evidence rule." *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014); *see Perry Homes v. Cull*, 258 S.W.3d 580, 606 (Tex. 2008); *Luccia*, 274 S.W.3d at 146. We focus on the language used in the contract because it is the best indication of the parties' intent. *Perry Homes*, 258 S.W.3d at 606. We must examine the entire contract in an effort to harmonize and effectuate all of its provisions so that none are rendered meaningless. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). All contractual provisions should be considered with reference to the entire instrument, and no single provision taken alone should be controlling. *Luccia*, 274 S.W.3d at 146 (citing *J.M. Davidson*, 128 S.W.3d at 229). We presume the parties to the contract intended every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows that the parties intended to use terms in a technical or different sense. *Valence Operating Co.*, 164 S.W.3d at 662. We may not rewrite the contract or add to its language under the guise of interpretation. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003). Rather, we must enforce the contract as written. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000).

"Facts and circumstances that may be considered include the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction." *Americo Life*, 440 S.W.3d at 22. However, "the parol-evidence rule precludes considering evidence that would render a contract ambiguous when the document, on its face, is capable of a definite legal meaning." *Id.*

## C.    The Lease

Section 1.1(q) of the lease prescribes the number of parking spaces to which Samsung is entitled under the lease. Section 1.1(q) provides that Samsung has:

> [a]ccess to an amount of parking spaces in the Parking Facility equal to 4 spaces per 1,000 RSF of the Premises. See <u>EXHIBIT D</u>.

Exhibit D of the lease provides the specifics regarding parking, including issuance of permits for spaces and other matters. Paragraph 7 of Exhibit D governs the assignment and sublease of parking spaces. It provides:

> Except as otherwise provided for in Section 14, Tenant shall not assign or sublease any of the Spaces without the consent of Landlord. Landlord shall have the right to terminate the parking agreement with respect to any Spaces that Tenant desires to sublet or assign.

Section 14 does not expressly mention parking spaces. Instead, it governs Samsung's sublease of office space. Section 14 is titled "Tenant Transfers" and defines a transfer as any "[s]ublease of all or part of the Premises, or assignment,

9

mortgage, hypothecation or other conveyance of an interest in this Lease."[1]  The lease sets forth the conditions under which Samsung may transfer an interest in the lease to affiliated versus non-affiliated entities:

> **14.3    Consent Not Required.**  If Tenant is not in Default, Tenant may effect a Transfer (a "Permitted Transfer") to a Permitted Transferee without Landlord's prior consent, but with notice to Landlord prior to the Permitted Transferee's occupancy. "Permitted Transferee" means any person or entity that:
>
> (a)    Either (1) controls, is controlled by, or is under common control with Tenant, (2) results from the merger or consolidation or non-bankruptcy-related reorganization of Tenant (for purposes hereof, "control" shall mean ownership of not less than fifty percent (50%) of all of the voting stock or legal and equitable interest in the entity in question), or (3) acquires all or substantially all of the stock and/or assets of Tenant as a going concern in one or more related transactions;
>
> (b)    Has entered into a joint venture or other business arrangement with Tenant;
>
> (c)    Has a tangible net worth immediately following the Transfer not less than Tenant's tangible net worth immediately before the transfer; and
>
> (d)    Will not, by occupying the Premises, cause Landlord to breach any other lease or other agreement affecting the Project.
>
> **14.4    Consent Required.**  Each proposed Transfer other than those prohibited under § 14.2 or permitted under § 14.3 requires Landlord's prior written consent, in which case the parties will proceed as follows:
>
> (a)    Tenant's Notice.  Tenant shall notify Landlord at least thirty (30) days prior to the proposed Transfer of the name and address of the proposed transferee and include with the notice

---

[1]    The lease also includes several additional definitions for "transfer" that are not relevant here.

10

of the following information: (1) applicable commencement and expiration dates, (2) a description of the affected space, (3) the proposed rental rates and relevant business terms, (4) the name/identity and associated financial information of the proposed transferee, and (5) a copy of the proposed Sublease/Assignment Agreement to be used to consummate the transaction, as well as such other information as may be reasonably and promptly requested by the Landlord. LANDLORD WILL HAVE NO OBLIGATION TO REVIEW A PROPOSED TRANSFER OR TO CONSENT OR DENY CONSENT TO A PROPOSED TRANSFER UNTIL ALL ITEMS AND INFORMATION SET FORTH ABOVE IN THIS § 14.4(a) HAVE BEEN PROVIDED TO LANDLORD.

(b) <u>Landlord's Rights</u>. Within ten (10) Business Days after receipt of Tenant's complete notice and all items required under § 14.4(a), Landlord shall either (i) provide written consent to Tenant of the proposed Transfer, or (ii) provide written denial of consent to Tenant of the proposed Transfer, consent not to be unreasonably withheld, conditioned or delayed if:

(A) The proposed transferee (provided that "transferee," as used in this subpart (A), does not include a subtenant who proposes to sublease less than two full floors) in Landlord's reasonable opinion, has the financial capacity to meet its obligations under the proposed Transfer;

(B) The proposed use is consistent with the Use and will not cause Landlord to be in breach of any lease or other agreement affecting the Project;

(C) The proposed transferee is typical of tenants that directly lease premises in Comparable Buildings;

(D) The proposed transferee is not an existing tenant or an Affiliate of an existing tenant, or a party with which Landlord is actively negotiating to lease space in the Building), <u>provided</u>, however, that the circumstances set forth above in this subsection (D) shall not be a factor or consideration in the decision to provide or deny consent if the existing tenant or Affiliate thereof is seeking to lease

or sublease space in the Building during the first five (5) years of the Term and Landlord is unwilling or unable to accommodate the needs of such tenant or Affiliate either due to a lack of space, inability to deliver space timely or other similar reason; and

(E)     Tenant is not in Default under this Lease.

Any denial of consent by Landlord must include a written explanation of the reason(s) for denying consent.

(c)     Compelling Consent.  If Landlord denies consent to a requested Transfer in violation of this Section 14.4, then as Tenant's sole and exclusive remedy against Landlord, Tenant may elect to either (i) bring suit against Landlord for specific performance or declaratory relief, or (ii) bring suit against landlord for Tenant's actual monetary damages caused by such violation, **AND UNDER NO CIRCUMSTANCES MAY TENANT TERMINATE THIS LEASE OR SEEK OR BE ENTITLED TO RECOVER ANY DAMAGES OF ANY OTHER KIND OR GREATER AMOUNT, INCLUDING, BUT NOT LIMITED TO, ANY SPECIAL, CONSEQUENTIAL, PUNITIVE, SPECULATIVE, INCIDENTAL OR INDIRECT DAMAGES WHETHER IN CONTRACT, TORT, OR UNDER ANY OTHER LEGAL OR EQUITABLE PRINCIPAL, ALL OF WHICH TENANT SPECIFICALLY WAIVES.**

In essence, paragraph 14.3 governs subleases to affiliated entities and does not require Briarlake's consent, while paragraph 14.4 governs subleases to non-affiliated entities, for which Briarlake's consent is required.  Paragraph 14.4(b) also sets forth the terms under which Briarlake may withhold its consent to a sublease of office space.

**D.    Analysis**

*The parties' arguments*

Samsung argues that the lease permits it to assign parking spaces to both affiliated and non-affiliated entities in correlation to the amount of any office space subleased.  Samsung argues that while a sublease of office space to a non-affiliate, unlike a sublease to an affiliate, requires consent, the lease does not permit Briarlake to withhold consent on the basis that the sublease includes an assignment of parking spaces.  Relatedly, Samsung contends that Briarlake cannot terminate parking spaces assigned pursuant to an authorized office space sublease.

Briarlake, on the other hand, argues that any assignment or sublease of parking by Samsung, unless pursuant to a sublease of office space to an affiliate, requires its separate consent, even if it has consented to the sublease of office space.  Briarlake also argues that it has an unqualified right to terminate Samsung's right to any parking spaces Samsung desires to sublet or assign.

*Assignment of parking spaces pursuant to Section 14*

Our first responsibility in interpreting the lease is to determine whether the relevant lease terms are susceptible to more than one reasonable meaning.  *See Luccia*, 274 S.W.3d at 146 (citing *DeWitt Cty. Elec. Coop.  v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)).  The limiting clause "[e]xcept as otherwise provided for in Section 14" in the first sentence of paragraph 7 of Exhibit D refers only to section 14 of the

13

lease, not any particular subsection of section 14. Thus, the plain meaning of the limiting clause is that paragraph 7 governs only assignments or subleases of parking spaces that are not governed by section 14. *See Schaefer*, 124 S.W.3d at 162 (court assumes parties selected particular terms for a reason and will not rewrite contract nor add to its language).

Section 14 contemplates office space subleases to two different types of entities. Paragraph 14.3 governs subleases to Samsung's affiliates which do not require Briarlake's consent. Paragraph 14.4 governs subleases to non-affiliated entities, for which Briarlake's consent is required. Notably, paragraph 14.4 itemizes the bases upon which Briarlake may withhold consent to the sublease of office space to a non-affiliated entity. These include: the proposed transferee lacks the financial capacity to meet the obligations of the sublease, is not typical of the tenants in comparable buildings, is an existing tenant or affiliate of a tenant, proposes a use inconsistent with the use of the property, or Samsung is in default under the lease. But 14.4 does not identify the assignment of parking spaces along with a sublease of office space as a basis upon which Briarlake may withhold consent to the sublease of office space to a non-affiliated entity.

Briarlake argues that the lease permits Samsung to assign or sublease parking spaces without consent to Samsung's affiliates, but that Samsung must obtain Briarlake's consent to assign or sublease parking spaces to non-affiliated entities,

14

separate from the consent that Samsung must obtain for the sublet of the office space to those entities. Thus, under Briarlake's interpretation, paragraph 14.3 provides for parking spaces to be assigned or sublet—because the reference to section 14 in paragraph 7 would otherwise have no meaning—but paragraph 14.4 does not.

Parking spaces are not expressly referenced anywhere in section 14, but section 14 must implicitly permit assignment of parking spaces in connection with an office space sublease, or the reference to section 14 in paragraph 7 would be meaningless. *See Seagull Energy*, 207 S.W.3d at 345 (in interpreting contract, court must effectuate all provisions so that none are rendered meaningless). To interpret paragraph 14.3 as permitting the assignment of parking spaces in connection with an office sublease while interpreting paragraph 14.4 as prohibiting it would be to treat these two paragraphs inconsistently, which we may not do. *See id.* (in construing contract, court must harmonize all contract's provisions). We therefore conclude that the lease permits Samsung to assign or sublease parking spaces in connection with the sublease of office space pursuant to section 14 without obtaining Briarlake's separate consent to the assignment of parking spaces.

*Interpretation is not unreasonable*

Briarlake contends that this interpretation is unreasonable for several reasons. Briarlake argues that under this interpretation, there would be no occasions when Samsung would have to obtain Briarlake's consent to assign parking spaces, making

15

paragraph 7's reference to obtaining consent redundant and meaningless. But there are other scenarios in which Samsung would still have to seek consent to assign or sublease parking, even if Samsung may assign or sublease parking in connection with a sublet of office space to affiliated and non-affiliated entities pursuant to section 14. In particular, Samsung would still be prohibited from assigning or subleasing parking spaces apart from an office space sublease—such as to another tenant of Briarlake—without obtaining Briarlake's consent. Thus, our interpretation of the lease does not render the consent requirement in paragraph 7 meaningless.

Briarlake also contends that this interpretation is unreasonable because the lease provides no guidance regarding the number of parking spaces that may be assigned in connection with an office space sublease. However, we must assume that the parties intended for every provision of the contract to have effect and should interpret the contract so as to give effect to every provision. *See Heritage Res.*, 939 S.W.2d at 121 (in construing contract, court presumes parties intended every clause to have some effect). Section 1.1(q) of the lease gives Samsung the right to access 4 parking spaces for every 1,000 rentable square feet of the lease, and the lease permits Samsung to assign interests that it holds under the leases. Thus, when Samsung sublets office space pursuant to the terms of section 14, the square footage of the sublet office space dictates the number of spaces that may be assigned.

Interpreting the lease in this fashion gives effect to every provision of the lease. *See id.*

Finally, Briarlake argues that this interpretation is unreasonable because it would permit Samsung to avoid the lease provision that requires Samsung to pay Briarlake 50% of any excess rent Samsung receives from subtenants above the amount Samsung pays for the subleased space. Briarlake argues that interpreting the lease to permit the assignment of parking in connection with a sublease of office space would allow Samsung to charge artificially low rents for office space to keep the rent at or below the amount it pays to Briarlake, and to then make up and exceed the difference by separately charging subtenants for parking. But a contract is not rendered unreasonable just because a party made a deal it does not like. *See Schaefer*, 124 S.W.3d at 162. Briarlake has not shown that this interpretation is unreasonable.

*Briarlake's termination right*

Briarlake argues that even if Samsung has the right to assign parking spaces in connection with the sublease of office space, the second sentence of paragraph 7 gives Briarlake an unqualified right to terminate Samsung's right to any parking spaces Samsung desires to sublet or assign, even if spaces are assigned in connection with an authorized office space sublease. Samsung, on the other hand, argues that permitting Briarlake to terminate Samsung's right to parking spaces even when the

17

parking spaces have been assigned in connection with an authorized office space sublease pursuant to section 14 would render the first sentence of paragraph 7 meaningless. Samsung argues that this would be inconsistent with even Briarlake's own interpretation of the first sentence of paragraph 7 as permitting Samsung to assign parking spaces to an affiliate in connection with a sublet of office space without Briarlake's consent. Samsung contends that to give effect to all of the provisions of the lease, the second sentence of paragraph 7 must necessarily be read in connection with the first sentence of paragraph 7 and understood to refer to those circumstances in which Samsung desires to transfer parking spaces apart from a sublease of office space.

We agree that interpreting the second sentence of paragraph 7 as giving Briarlake an unqualified right to terminate Samsung's right to parking spaces would render the first sentence of paragraph 7 meaningless. Briarlake argues that its termination right and the consent requirement are two different things. But there is no meaningful distinction between Briarlake's consent to an assignment of parking spaces and Briarlake's right to terminate Samsung's right to those spaces. In other words, there is no plausible scenario in which Briarlake would consent to an assignment of parking spaces, yet terminate the right to those spaces, or vice versa. *See Frost Nat'l Bank*, 165 S.W.3d at 312 (when interpreting contract, court avoids unreasonable interpretations). If Briarlake can terminate Samsung's right to parking

spaces regardless of how they are assigned, the limiting clause stating that Samsung must get consent for the assignment of parking spaces "[e]xcept as otherwise provided in Section 14" would have no meaning. Because Briarlake's proposed interpretation of the second sentence of paragraph 7 would render other parts of the lease meaningless, it is not a reasonable interpretation. *See Seagull Energy*, 207 S.W.3d at 345 (in interpreting contract, court must effectuate all provisions so that none are rendered meaningless); *Heritage Res.*, 939 S.W.2d at 121 (in construing contract, court presumes parties intended every clause to have some effect). To give effect to all provisions of the lease, the second sentence of paragraph 7 must only give Briarlake the right to terminate Samsung's right to parking spaces that Samsung desires to assign apart from a sublease of office space.

In short, the plain language of the lease permits Samsung to assign parking in connection with a sublease of office space pursuant to section 14 in proportion to the rentable square feet as set forth in section 1.1(q). The lease prohibits Samsung from assigning or subleasing parking spaces apart from an office space sublease without Briarlake's consent, and permits Briarlake to terminate Samsung's right to any parking spaces Samsung desires to assign or sublease apart from an authorized office space sublease. Because the lease can be given a definite and certain legal meaning and this interpretation is not unreasonable, inequitable, or oppressive, it is unambiguous. *See Frost Nat'l Bank*, 165 S.W.3d at 312. Moreover, the trial court's

judgment sets forth an interpretation of the lease consistent with this analysis. Briarlake contends that under the trial court's interpretation of the lease, Briarlake's absolute right to terminate any transfer of parking spaces by Samsung is completely eliminated from the lease, but the trial court's judgment properly limits Briarlake's termination right to parking spaces Samsung desires to assign or sublet apart from an office space sublease pursuant to section 14. Accordingly, we hold that the trial court did not err in granting summary judgment for Samsung and denying summary judgment to Briarlake. *See FM Props.*, 22 S.W.3d at 872.

We overrule Briarlake's first issue.

Because we have concluded that the lease is unambiguous and the trial court construed it properly, we do not reach Briarlake's second and third issues, alternative arguments regarding ambiguity, or its fourth issue, which is cumulative of its first three issues.[2]

---

[2]    In its second issue, Briarlake argues that the lease is ambiguous, but parol evidence permitted the trial court to accept its interpretation of the lease as a matter of law. In its third issue, Briarlake argues that the lease is ambiguous, and therefore summary judgment for either party was improper. In its fourth issue, Briarlake argues that the trial court erred in granting summary judgment for Samsung and denying summary judgment for Briarlake based on the "specific points of error above in its additional issues."

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.