# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00404-CV

**John Gannon, Inc., Appellant**

**v.**

**Gunnarson Outdoor Advertising, Inc, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT NO. 99-0584, HONORABLE RONALD G. CARR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

John Gannon, Inc. ("Gannon") sued Gunnarson Outdoor Advertising, Inc. ("Gunnarson") for breach of contract and related claims. The parties executed a contract whereby Gannon was to buy various assets from Gunnarson, but Gunnarson terminated the contract before the sale was consummated. Gannon sought damages and specific performance. Gunnarson eventually moved for traditional and no-evidence summary judgment. *See* Tex. R. Civ. P. 166a(c), (i). It argued that it had not breached the contract for two basic reasons: (1) Gannon had itself nullified the contract by failing to accept the assets Gunnarson tendered; and (2) even if Gannon had not itself nullified the contract, Gunnarson was entitled to terminate because the contractual conditions precedent to closing were not satisfied. The trial court granted Gunnarson's summary-judgment motions, and Gannon appealed. We will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Gannon and Gunnarson were both in the outdoor-advertising business. On August 13, 1998, they signed a contract whereby Gannon agreed to buy assets from Gunnarson that included billboards and related land leases, advertising contracts, sign permits, and accounting records. Paragraph 2 of the contract contained a "Due Diligence" clause that gave Gannon twenty days to inspect the assets from the day Gunnarson made them available (Gunnarson was supposed to do so by August 18, 1998). When the twenty-day review period ended, Gannon had to notify Gunnarson in writing whether it accepted or rejected the assets. If it rejected them, the contract would be rendered null and void.

Paragraph 12 of the parties' contract, entitled "Condition[s] to Seller's Obligations," provided in relevant part that "[t]he obligation of Seller to consummate the transaction contemplated hereby is subject to the fulfillment of . . . all obligations of Purchaser to be performed hereunder." Paragraph 17, entitled "Termination," provided in relevant part that "[t]his Agreement and the transaction contemplated hereby may be terminated at any time prior to the Closing . . . by any [party] if the Closing shall not have occurred within thirty (30) days of the date of this Agreement [as] a result of the non-fulfillment at such time of any of such party's conditions [on performance]." The parties agree that paragraph 17 allowed either party to terminate the contract after September 13, 1998 (thirty days from the date of execution) if any of the conditions precedent to its performance was unfulfilled.

Gannon states in its appellate brief that, pursuant to paragraph 2, it "began its 'due diligence' immediately after the Purchase Agreement was signed." The parties disagree, however,

2

on when the twenty-day clock on Gannon's due-diligence period began to run. Gannon argues that the twenty-day clock never began to run because Gunnarson never finished making all of its asset-related information available for inspection. Gunnarson, on the other hand, argues that it made all of the relevant information available for inspection by September 15, 1998. Whatever the case, after Gannon began reviewing the assets that Gunnarson did make available, it quickly decided that the assets were not as it desired. For example, Gannon took issue with the fact that a number of Gunnarson's land leases and advertising contracts appeared to have expired. Gannon admits that Gunnarson "did undertake to resolve these discrepancies and was successful with at least some of them."

Thus, to an extent, the parties worked together in the fall of 1998 to try to consummate the contract: Gannon pointed out shortcomings in Gunnarson's assets, and Gunnarson attempted to rectify at least some of them.[1] Simultaneously, Gannon tried to obtain purchase financing from Frost Bank. Evidence in the record indicates that Frost Bank was indeed interested in financing Gannon's purchase but would not do so unless certain shortcomings in Gunnarson's assets were rectified (for example, Gunnarson's land leases were extended).

On January 15, 1999, Gunnarson sent Gannon a letter proposing to terminate the contract because the parties could not achieve a "meeting of the minds." Gunnarson offered to return Gannon's $25,000 earnest money deposit. Gannon insisted that the parties' contract was valid and brought this lawsuit to enforce it. Gannon's petition included causes of action for breach of contract, fraudulent inducement, common-law fraud, statutory fraud, and negligent misrepresentation. It

---

[1] Gannon claims, though, that from the outset Gunnarson was not fully cooperative.

sought remedies including specific performance, "loss of bargain" damages for Gunnarson's alleged bad faith, exemplary damages, and attorney's fees.

After nearly nine years of discovery, Gunnarson filed two partial motions for summary judgment—one on Gannon's request for specific performance, and one on Gannon's claim for breach of contract. Gunnarson styled its motions as both traditional and no-evidence motions. *See* Tex. R. Civ. P. 166a(c), (i). The trial court granted both of Gunnarson's motions without stating its reasons for doing so. Gannon subsequently nonsuited its remaining claims and filed this appeal.

## STANDARD OF REVIEW

A "traditional" motion for summary judgment is properly granted when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.).

A party seeking a "no-evidence" summary judgment, on the other hand, does not bear the burden of establishing its right to judgment by proving a claim, but instead asserts that there is no evidence of one or more essential elements of a claim on which the opposing party will have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). If the nonmovant fails to produce more than a scintilla of probative evidence raising a genuine issue of material fact as to each challenged element on which he has the burden of proof, summary judgment is proper. *Id.*

In reviewing a grant of summary judgment, we take as true evidence favorable to the nonmovant, making every reasonable inference and resolving all doubts in the nonmovant's favor.

4

*Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). "[W]hen there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was granted, the appealing party must negate all grounds on appeal." *State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 381 (Tex. 1993). Put another way, if summary judgment may have been granted, properly or improperly, on a ground that an appellant does not challenge, we must affirm it. *See Holloway v. Starnes*, 840 S.W.2d 14, 23 (Tex. App.—Dallas 1992, writ denied) (citing, inter alia, *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970)).

## DISCUSSION

Gannon argues that the trial court should not have granted either of Gunnarson's partial-summary-judgment motions. We will address those motions in turn.

### I. *Gunnarson's Motion for Summary Judgment on Gannon's Breach-of-Contract Claim*

As noted above, Gunnarson moved for both traditional and no-evidence summary judgment on Gannon's breach-of-contract claim. As a ground for both traditional and no-evidence summary judgment, Gunnarson argued that there was no evidence Gannon had accepted Gunnarson's assets.[2] As a result, Gunnarson argued, it was entitled to terminate the contract under paragraphs 12 and 17.

Gannon argues on appeal that its contractual duty to accept Gunnarson's assets never matured. Gannon acknowledges that under paragraph 2 of the parties' contract it had to accept or reject Gunnarson's assets at the end of the twenty-day due-diligence period, but it argues that the

---

[2] Again, paragraph 2 of the contract imposed an affirmative obligation on Gannon to accept or reject Gunnarson's assets at the conclusion of the twenty-day due-diligence period.

clock never started to run on its due-diligence period because Gunnarson failed to turn over all of the required due-diligence information.[3]

Although Gannon makes this argument on appeal, it did not make it in its written trial-court response to Gunnarson's summary-judgment motion (Gannon's "Response"). Thus, as Gunnarson points out, the argument is waived. *See* Tex. R Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal" of summary judgment.). Gannon is instead limited to the arguments contained in its Response. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).[4]

Gannon's Response actually did not even address Gunnarson's acceptance argument. It did object to Gunnarson's characterization of related facts as "undisputed," but it did not provide argument or evidence to substantiate this objection. Gannon did attach nine exhibits to its response, but it did not expressly relate them to its objection or explain how they demonstrated that Gunnarson's "facts" were genuinely disputable. The trial court had no obligation to comb Gannon's exhibits for relevant information and deduce how that information might demonstrate the existence of genuine disputes. *See Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.]

---

[3] Gannon writes: "Under the express terms of [paragraph 2], Gannon's twenty-day due diligence period *did not even begin to run* until Gunnarson had first provided the information it was required to make available for Gannon to review. That information was never provided in full . . . . [s]o the time for Gannon to either accept or reject the assets never arrived."

[4] The only argument Gannon *could* raise for the first time on appeal—that Gunnarson's proffered grounds for summary judgment were legally insufficient—Gannon does *not* raise on appeal. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (only issue summary-judgment non-movant may raise for first time on appeal is that movant's grounds were legally insufficient to support summary judgment).

1996, no writ) (summary-judgment non-movant has "burden of pointing out to the trial court where in the evidence the issues set forth in [its] response are raised"). In other words, Gannon did not effectively substantiate its objection to the "facts" in Gunnarson's summary-judgment motion. Thus, the objection could not itself preclude summary judgment.

Gannon's Response did state that Gannon "performed" and "was in full compliance with its duties and obligations" under the contract, but the argument supporting these assertions concerned only Gannon's efforts to obtain financing. It did not even mention Gannon's obligation to accept Gunnarson's assets.

The trial court may, rightly or wrongly, have granted summary judgment on the basis of Gunnarson's acceptance argument. As noted above, Gannon has waived any argument concerning that issue on appeal because it failed to raise it in the trial court. *See* Tex. R Civ. P. 166a(c). As a result, we must affirm the summary judgment. *See Holloway*, 840 S.W.2d at 23 (if summary judgment may have been granted, properly or improperly, on ground not challenged, we must affirm); *Juarez v. Longoria*, 303 S.W.3d 329, 330-31 (Tex. App.—El Paso 2009, no pet.) (listing cases holding same). We overrule Gannon's first issue.

## II. *Gunnarson's Motion for Summary Judgment on Gannon's Request for Specific Performance*

Gannon argues that, should it prevail on its breach-of-contract claim, it was entitled to the remedy of specific performance. *See Stafford v. Southern Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied) ("Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract."). This argument is obviated by our affirmance of the summary judgment on Gannon's breach-of-contract claim. But in any event, a

7

plaintiff seeking specific performance must prove that it was ready, willing, and able to perform its contractual obligations at the time the defendant breached. *See Luccia v. Ross*, 274 S.W.3d 140, 147 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). This means that if the plaintiff's ability to perform depended on third-party financing, the plaintiff "must show that [it] had a firm commitment for financing, or [it] will not be entitled to specific performance." *Id*. Gunnarson's summary-judgment evidence established that Gannon (1) required financing to consummate the parties' deal and (2) did not have a firm commitment for financing from Frost Bank.[5] Thus, summary judgment against Gannon was proper on the issue of specific performance. We overrule Gannon's second issue.

## CONCLUSION

For the reasons stated above, we affirm the summary judgment in Gunnarson's favor.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton;
    Dissenting Opinion by Justice Patterson

Affirmed

Filed:   August 11, 2010

_____

[5] This evidence included deposition testimony in which John Gannon, the owner of John Gannon, Inc., admitted that (1) Gannon anticipated financing the purchase through Frost Bank; (2) Frost Bank never firmly committed to financing the purchase; and (3) Gannon had not secured financing by January of 1999. The evidence also included Gannon bank statements, submitted in camera to demonstrate that Gannon did not have enough cash to close the deal without financing. (These statements are not in the record.)

8