**Opinion issued December 31, 2025**



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――

## NO. 01-24-00990-CV

―――――――――――――

**DARREL ARNAZ BURDITT, Appellant**

**V.**

**LOYD EVERETT HALL AND DEBORAH MCCRAY JACKSON, Appellees**

On Appeal from the 155th District Court
Austin County, Texas
Trial Court Case No. 2019V-0105

## MEMORANDUM OPINION

Appellant Darrel Arnaz Burditt, appearing pro se, filed this lawsuit more than six years ago seeking specific performance of an earnest money contract for the sale of real property. The trial court granted a no-evidence summary judgment against

Burditt. In three issues on appeal, Burditt contends that the summary judgment violated his rights under the Fourteenth Amendment. We affirm.

## Background

The dispute in this appeal concerns 31.9 acres of land in Austin County. Appellees Loyd Everett Hall and Deborah McCray Jackson own the land, and Burditt contends that they agreed to sell all or part of it to him before backing out of the deal. Hall and Jackson are siblings and distant relatives of Burditt, and Hall died prior to this appeal. The parties describe the facts differently. But to help understand and add context to their disagreement over the facts, we first discuss the procedural history of the case.

### A. Procedural History

Burditt filed suit against Hall and Jackson seeking specific performance of an earnest money contract for the sale of the property. Burditt attached a signed earnest money contract to the petition. According to the contract, Burditt agreed to pay $200,000 in exchange for Jackson's "1/2 undivided interests [in the property], approximately 16 plus acres," and "1 acre of Lloyds [sic] remaining land." The contract also provided that the "property will be subdivided as agreed." At some point, Burditt filed a lis pendens.

Jackson and Hall filed their live answer generally denying Burditt's allegations. They also asserted several affirmative defenses, including that they

lacked capacity to enter the contract at the time it was executed; their indorsement or assignment of the contract was not genuine; the contract lacked consideration; they had superior title; and estoppel. They also asserted a counterclaim seeking declarations that the contract and the lis pendens were unenforceable.

Hall and Jackson filed a combined motion for summary judgment and to expunge the lis pendens. The summary judgment motion asserted both no-evidence and traditional grounds. The motion asserted that Burditt had no evidence of any element required to show an enforceable contract. The motion also asserted that Burditt had no evidence that he was ready, willing, and able to timely perform his obligations under the contract or that Burditt actually tendered performance. Both elements are required for specific performance. On traditional grounds, Hall and Jackson disputed the existence of a valid contract and whether Burditt could establish the elements of specific performance.

Jackson and Hall gave 21 days' notice of a hearing on the motion. Burditt did not file a response to the motion. But 14 days before the hearing, he filed a cross-motion for summary judgment. The same day, he gave notice of a hearing on the cross-motion. The notice stated that the cross-motion would be heard at the hearing on Hall and Jackson's motion. But the notice provided only 14 days' notice of the hearing rather than 21 days as required under Rule of Civil Procedure 166a(c). *See* TEX. R. CIV. P. 166a(c) ("Except on leave of court, with notice to opposing counsel,

3

the motion [for summary judgment] and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing."). Hall and Jackson filed a written objection arguing that Burditt's cross-motion was untimely filed without leave of court. On the day of the hearing, Burditt filed a motion requesting that the trial court "accept his motion on the docket control order as a motion to deny [Hall and Jackson's] motion for summary judgment."

At the hearing, the trial court heard arguments on the timeliness of Burditt's cross-motion. The court sustained Hall and Jackson's timeliness objection and declined to consider the cross-motion at the hearing. After the hearing, the court signed a final judgment granting Hall and Jackson's no-evidence summary judgment motion, dismissing Burditt's action, and granting a nonsuit of Hall and Jackson's counterclaim.

## B. Factual Background

The parties describe the facts differently, so we will start with the description by Burditt. He explains that the case involves relatives:

> The Appellant [Burditt] and the Appellees [Hall and Jackson] are blood relatives. They are related by both their maternal Great Grandfathers, who were brothers[.] The Appellant and Loyd Hall were close friends for more than 50 years without any major incident or any fighting between them until this dispute arose between them.

> The Appellant's relationship with Mrs. Jackson was nothing more than knowing she existed because she was much younger than the Appellant and Loyd Hall by at least 8 years. . . .

4

The defendants below and Appellees here, Loyd Hall (died September 3, 2019) and Deborah Jackson are or were brother and sister. In 2009 they inherited 31.9 acres of land from their Grandmother Bessie Marie Hall.

Next, Burditt recounts how delinquent taxes on the property led the two sides to make a deal, but they ended up in court when the closing failed to take place:

[F]inally it was agreed that Mrs. Jackson offered to sell 100% of her interest and Mr. Hall offer[ed] to sell 1 acre and all of his interest in the house on the property for $200,000. 17 acres and a house for two hundred thousand dollars. Appellant and Appellees all signed the agreement . . . .

Appellee Mrs. Jackson called the Appellant and informed him that there would be no closing.

Thereafter, Appellant filed suit . . . .

According to Burditt, the lawsuit then settled: "[A]pparently the appellees decided that they would rather sell everything instead of going to trial so they agreed to sell everything for $400,000[.]" But the situation then deteriorated: "My then attorney refused to file anything to enforce the settlement. We then had an argument, and he filed a motion to be released from the case. The court . . . granted him his request on September 19, 2023."

Because he needed "only one motion to be granted," Burditt decided to proceed pro se. But he suspected that the trial court disapproved of this choice: "The Judge seemingly was offended by this course of action and by his scribblings on the Appellant[']s motion [noted] his disapproval in a manner that seemed to the

5

Appellant to be nonimpartial[.]" So Burditt "file[d] a motion to recuse," but the motion was denied.

Burditt next indicates that the court granted a summary judgment against him:

On September 17, 2024, a hearing was held in the lower court on a motion that was about what allegedly happened before February 7, 2023. This was a bunch of moot points because given the record of the court the case was settled on February 7, 2023. The Judge issued a final judgment on September 19, 2024 . . . exactly one year to the day the court dismissed my attorney granting the motion to the Appellees and dismissed my case.

In Burditt's view, the court's summary judgment runs afoul of the Fourteenth Amendment's due process guarantees. Burditt also takes exception in general to the court's handling of the case:

This district court brought this on itself. It is apparent that the Judge's rulings and conduct was done so to discourage the Appellant from self-representation. He did everything in his power except tell the Appellant directly that he wasn't granting him anything unless and until he hired another attorney. The appellant got his message the first time he stood before him, and he is just as undaunted today as he was that day if not more so. The Judge was also undaunted since he is a village tyrant and without hesitation he has religiously ruled under color of law.

Hall and Jackson do not see the case quite this way. They disagree with many of Burditt's assertions, although not all of them, and they summarize the case as follows:

On July 26, 2019, Appellant filed suit for specific performance of a disputed earnest money contract which he had drafted and dated in 2019. Appellant also filed a lis pendens. The parties disputed the contract and Appellant's right to specific performance. The lawsuit was never settled (as there is an absence of any evidence of a settlement in

6

this record). The litigation and the lis pendens continued to cloud the title to the property for over five years. On August 27, 2024, Appellees filed a No Evidence Motion for Summary Judgment . . . . After a hearing on September 17, 2024, the trial court granted the No Evidence Motion . . . .

(Citations omitted.) According to Hall and Jackson, the record does not show that a settlement took place:

> Appellant does not point to any actual evidence in the record as grounds for reversing the granting of the No Evidence Motion. Instead, Appellant cites to the [docket] entry of "Judge's Notes" which appears to say that the case "settled" some years ago . . . . However, there is no signed and written agreement under TEX. R. CIV. P. 11 or any other agreement for that matter in this record that settled the case. Nor are the Judge's notes of any significance to the issue at hand. . . . Appellant goes on for many pages citing the U.S. Supreme Court and casting defamatory aspersions on the District Court and undersigned counsel, but in the end, while it is full of sound and fury, it is ultimately signifying nothing.

This appeal followed.

## Summary Judgment

In three issues on appeal, Burditt asserts that the summary judgment violated his rights under the Fourteenth Amendment.

## A.    Standard of Review

We review a summary judgment ruling de novo. *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 882 (Tex. 2024). We also review constitutional issues de novo. *Stary v. Ethridge*, 712 S.W.3d 584, 590 (Tex. 2025).

7

After an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence supporting one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.*

The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the challenged elements of the claim. *Id.*; *Malone v. Harden*, 668 S.W.3d 39, 43 (Tex. App.—Houston [1st Dist.] 2022, no pet.). We will affirm the no-evidence summary judgment if (1) there is no evidence on the challenged element, (2) the evidence offered to prove the challenged element is no more than a scintilla, (3) the evidence establishes the opposite of the challenged element, or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenged element. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quotation omitted); *Malone*, 668 S.W.3d at 43.

To determine whether a fact issue exists, we examine the evidence in the light most favorable to the nonmovant and indulge reasonable inferences and resolve any doubts against the moving party. *Fossil Grp.*, 691 S.W.3d at 882. The trial court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i).

**B.    Analysis**

On appeal, Burditt presents the following question as his first issue:

> Is the 14th Amendment due process and equal protection clause violated when a No Evidence Summary Judgement based on moot facts and fictitious points that has nothing to do with the case as it stood on September 17, 2024 and there is more than a scintilla of evidence that would lead a jury to rule for the Plaintiff or non-moving party is granted in favor of defendants, thereby depriving the Plaintiff of his property interest?

His remaining two issues offer variations on the same theme.[1] At bottom, he argues that the parties struck a deal that ought to be enforced.

In support of this view, Burditt asserts in his brief that there was an email exchange in which the lawyers for the two sides agreed to settle for $400,000, with Burditt to pay that sum of money in exchange for the land. He further asserts that in hindsight, "the proper course of the action was for the judge on September 19, 2023 to have ordered the Appellant's then attorney who had been paid in full to finish[] the job he had before him."

In response, Hall and Jackson make several points. First, they assert that it is "uncontested that the Appellant did not file a response to the No Evidence motion by the deadline. Nor did he seek leave to file a late response or file a motion for

---

[1]    Burditt's second issue states: "Is the 14th Amendment due process and equal protection clause violated when the court cancels a jury trial and thereby denies the Plaintiff his right to a jury trial when he has paid the fees for a jury trial?"

Burditt's third issue states: "Is the 14th Amendment due process and equal protection clause violated when the court denies the Plaintiff a new trial . . . [?]"

continuance." Because Burditt did not file a response raising a fact issue "on or before the deadline, the trial court was required to grant Appellees' Motion."

Second, Hall and Jackson assert that there is no evidence of a settlement. Although they acknowledge the mention of a settlement in a docket notation by the trial court, they observe that docket entries have no legal consequence and do not constitute evidence of a contract.

Finally, Hall and Jackson assert that the Fourteenth Amendment arguments are unpreserved and unpersuasive. Specifically, they argue that Burditt raises these arguments for the first time on appeal (and thus the arguments come too late) and that, in any event, Texas courts have recognized the constitutionality of summary judgment practice since at least 1952. *See Gulbenkian v. Penn*, 252 S.W.2d 929, 931 (Tex. 1952).

When the trial court granted the no evidence summary judgment, it had no choice. Hall and Jackson's summary judgment motion carried its initial burden. It stated the elements of Burditt's claim that lacked evidence, Burditt did not file a response to the motion, and thus the court had an obligation to grant the motion. The summary judgment rule uses the word "must" when describing the trial court's duty in such a situation: "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i).

The only document that Burditt filed after Hall and Jackson moved for no evidence summary judgment was his own cross-motion for summary judgment. He filed the cross-motion 14 days before the hearing on Hall and Jackson's motion, but at the hearing the trial court made clear that the cross-motion was not properly set for hearing and would not be considered at that time. The court asked Burditt how the cross-motion could be timely with only 14 days' notice: "I guess I'm going to come back then to your MSJ that I have an objection to the timeliness of it that I believe somebody said was filed 14 days ago, which doesn't appear to be timely under the rules, so how do you feel it's timely, Mr. Burditt?" The court continued: "You can file anything you want, whether or not it's timely is another matter. . . . But you filing something, just because my coordinator said you could put it there, doesn't mean . . . that I gave leave to file a document and shortened the time for it to be heard at a hearing." The court then sustained Hall and Jackson's objection to the timeliness of the cross-motion and declined to consider it at the hearing:

> Well, I'm just not going to take it up today. I have an objection here to the timeliness of it. I believe under the rules I need to sustain that objection. I am sustaining the objection to your motion for summary judgment that it was not timely filed 21 days in advance of the hearing and proper notice given of hearing potentially for today. So, we will not take up and discuss your motion for summary judgment here today.

After hearing both sides' arguments on Hall and Jackson's no evidence motion, the trial court stated that it would not rule from the bench and that it would review the papers that were properly before it. Although Burditt told the court that

11

he had green cards to show certain correspondence, the court noted that it could not rely on evidence that was not properly filed: "I don't know if it's been properly evidenced. Again, you're proceeding pro se, and you may think you have things in a proper legal format for this Court but you may not. I don't know. I'm going to review what is in the file and the documents here—that are tendered here."

Burditt reiterated that he had green cards in his possession as proof: "Okay. Your Honor. Sending a certified mail, I don't have to think, I know I sent him a certified mail. I know I got it back. I know I got the green card."

The court replied that Burditt might well have such papers, but if they were not on file, that would pose a problem: "[M]aybe all of that happened, but if you didn't file it properly as evidence in this case for my consideration timely, or in response to this, I don't know. I'm just telling you, you may may have something, it may be in your file, but if it's not properly before the Court, it means nothing legally." The court would not allow Burditt's pro se status to excuse his noncompliance with the summary judgment rules: "You're representing yourself, you have to figure out the proper way to do things. So do what you think you need to do or hire an attorney to help you do what you think you need to do. And so I'm going to issue my rulings hopefully by the end of this week."

The trial court ultimately signed a summary judgment stating what it had considered:

On the 17th day of September, 2024, this cause came on to be heard on Defendants' No Evidence Summary Judgment. The Court has considered the Motion; the lack of Response by Plaintiff [Burditt] despite timely and proper notice being given; the pleadings on file; and has heard extensive argument. Having examined the briefing submitted, the court finds that there is no genuine issue of material fact, and that Defendants [Hall and Jackson] are entitled to judgment as a matter of law.

Given that Hall and Jackson's no evidence summary judgment motion identified the elements of Burditt's claim lacking evidence, given the absence of a summary judgment response, given what the trial court considered, and given the word "must" in the rule, the trial court's hands were tied. Rule 166a(i) required the court to grant the motion. *See id.*

Although we do not see where Burditt preserved a constitutional argument in the trial court, we note that courts have held Rule 166a consistent with the Fourteenth Amendment. *See Silvio v. Newman*, No. 01-10-01153-CV, 2014 WL 3107570, at *3 (Tex. App.—Houston [1st Dist.] July 8, 2014, no pet.) (mem. op.). "Summary judgment proceedings have long been recognized in the law, and this procedure does not deny a party the right to have a remedy by due course of law in open court." *Id.* (citing *Lattrell v. Chrysler Corp.*, 79 S.W.3d 141, 149 (Tex. App.—Texarkana 2002, pet. denied)). "The summary judgment rule has been in effect since 1950, and courts have consistently upheld its validity under the due process clause." *See id.* Also, summary judgment under Rule 166a does not deprive a party of the constitutional right to a jury trial. *See Lattrell*, 79 S.W.3d at 150–51; *see also Fid. & Deposit Co.*

13

*of Md. v. United States*, 187 U.S. 315, 319–21 (1902) (construing rule of Supreme Court of District of Columbia).

"When a party cannot show a material fact issue, there is nothing to submit to a jury, and the grant of summary judgment to the opposing party does not violate the constitutional right to a jury trial." *Fertic v. Spencer*, 247 S.W.3d 242, 251 (Tex. App.—El Paso 2007, pet. denied).

Even if the trial court had considered Burditt's untimely cross-motion as a substitute for a response, the outcome would remain the same. To be entitled to specific performance, Burditt would have needed to present evidence that he was ready, willing, and able to perform, because without such evidence, courts cannot order specific performance. *See, e.g.*, *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593–94, 599–600 (Tex. 2008) (quotations omitted); *Luccia v. Ross*, 274 S.W.3d 140, 146–47 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). He did not come forward with such evidence, so the trial court still would have been required to grant the motion. We therefore hold that the trial court did not err by rendering summary judgment.

## Conclusion

We affirm the trial court's judgment. All pending motions are dismissed as moot.

David Gunn
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.